**In re the MARRIAGE OF Steve N. ANTUNA, Appellant,**

**and**

**Barbara A. Antuna, Appellee.**

**No. 98CA1999.**

Colorado Court of Appeals, Div. IV.

July 6, 2000.

Joseph D. Bloch & Associates, P.C., Mark D. Chapleau, Denver, Colorado, for Appellant.

DiManna & Jackson, Michael F. DiManna, Neeti Pawar, Denver, Colorado, for Appellee.

Opinion by Judge ROTHENBERG.

In this dissolution of marriage action, Steve N. Antuna (husband) appeals from the permanent orders concerning the division of property, award of maintenance, determination of child support, and attorney fees payable by Barbara A. Antuna (wife). We affirm in part, reverse in part, and remand with directions.

The parties stipulated to joint custody of their daughter, with the wife designated as the primary residential custodian. They also agreed to divide equally a retirement fund in wife's name by a Qualified Domestic Relations Order. The balance of the financial issues were presented to the trial court for resolution.

After hearing the testimony of three experts, the trial court credited the testimony of wife's two experts and valued wife's residence at $370,000, even though it was purchased for a higher amount. The court also found that the testimony of wife's expert regarding the value of her interest in a medical corporation was more credible than that of husband's expert, and it valued that asset at $169,000.

The court further found that all of the assets had been acquired with wife's earnings and that division of the interest in the medical corporation would constitute an unfair windfall to husband. It thus awarded that entire asset to wife without crediting her with its value.

Each party was awarded the personal property in his or her possession.

The court determined that husband would receive property with a net value of $166,527 and also determined, without considering the value of wife's interest in the medical practice, that wife would receive property in the amount of $264,562. In order equitably to divide the property, it ordered wife to pay husband the sum of $49,917.50.

The trial court further found that husband met the threshold of need entitling him to maintenance, and after considering the factors listed in § 14–10–114(2), C.R.S.1999, it ordered wife to pay him maintenance of $2000 per month beginning August 1998, for a period of 24 months.

In computing child support, the court found that husband earned $2000 per month gross income and that wife earned $19,500 per month, for a combined income of $21,500, which exceeded the uppermost level of the child support guidelines. The court found that husband keeps the child 97 overnights per year, but it applied worksheet A to calculate husband's child support obligation of $290.05 per month. *See* § 14–10–115(14)(a), C.R.S.1999. The court did so because it found that application of worksheet B (shared physical care formula), *see* § 14–10–115(14)(b), C.R.S.1999, would have resulted in wife paying husband child support of $90.73 per month.

After considering the financial resources of the parties, the court further determined that it was appropriate for wife to assist husband with the partial payment of his attorney fees, and ordered her to pay $10,000 directly to his attorney.

## I.

Initially, we reject wife's assertion that husband is barred from appealing any portion of the property division because he has received his share of the retirement funds. These funds were divided by agreement of the parties before the hearing on permanent orders.

■ Acceptance of the benefits of a judgment constitutes a waiver of appeal rights only if such action is inconsistent with the basis for the appeal. It is when the appeal, if successful, will again put into issue the right of the party to receive the benefits already accepted that a waiver of the right to appeal has been found. *In re Marriage of Burford*, 950 P.2d 682 (Colo.App.1997); *see In re Marriage of Jones*, 627 P.2d 248 (Colo.1981).

Here, the parties agreed that the retirement funds held by wife would be shared equally between them based on their value on the date of the decree. Permanent orders on all other issues were entered after the hearing.

In a prior motion, husband asserted a financial need for the immediate distribution of the stipulated funds, and a judge of this court ruled that husband could receive the stipulated funds without waiving his appellate rights.

Because husband's acceptance of the retirement benefits is not inconsistent with the basis of his appeal, we conclude he did not waive his right to appeal by accepting such benefits. *See In re Marriage of Burford, supra; cf. In re Marriage of Lee*, 781 P.2d 102 (Colo.App.1989) (acceptance of maintenance payments did not result in a waiver of the right to appeal; public policy prohibits requiring former spouse to elect between the necessities of life and the right to appeal).

## II.  Discovery

We also reject husband's contention that the trial court abused its discretion in failing to strike the report of one of wife's experts and in allowing another to testify.

In *Todd v. Bear Valley Village Apartments*, 980 P.2d 973 (Colo.1999), the supreme court reaffirmed the principle that a party should not be denied his or her day in court because of an inflexible application of the rules of procedure. Further, in determining whether the severe sanction of witness preclusion is appropriate, the trial court should consider a number of factors including whether the opposing party will have an adequate opportunity to defend against the evidence. These principles support the trial court's ruling here.

### A.

■ Husband maintains that wife should not have been permitted to submit the expert's report concerning her interest in the medical practice as an exhibit because it was not timely exchanged under C.R.C.P. 26(a)(2)(C)(III), and there was no valid reason given to support the delay. We disagree.

C.R.C.P. 26.2(a)(2)(C) provides that disclosures shall be made in a domestic relations case at least 60 days before the date set for the commencement of the hearing. The disclosure of expert testimony must be accompanied by a written report or summary.

Here, both parties filed a formal disclosure list of witnesses less than 60 days before the date of the permanent orders hearing. In her list, which was filed seven days after husband's list was filed, wife asserted that her accountant would be a rebuttal witness and would testify regarding the value of wife's interest in the medical practice and, therefore, that such expert was not required to file a written report.

At the permanent orders hearing, wife's expert submitted a written report, but only his curriculum vitae was admitted into evidence. Husband's expert testified first and critiqued the opinion that wife's expert had presented in his report regarding the value of her interest in the medical practice.

While husband's expert originally valued the interest at $285,000, without a reduction for present value, he later used other methods to value that interest at greater than $300,000. However, that expert did not disclose the subsequent opinions until his testimony at trial.

Even if we assume that wife should have exchanged her expert's report earlier, husband failed to show he was prejudiced by the late receipt. Accordingly, we conclude the trial court did not abuse its discretion when it declined to strike the testimony of wife's expert.

### B.

Husband also asserts that the trial court erred in allowing wife to present rebuttal testimony concerning the sales of homes in Highlands Ranch because she did not timely disclose that expert pursuant to C.R.C.P. 26(a)(2)(C)(III). Again, we disagree.

■ C.R.C.P. 26.2(a)(2)(C)(III) requires the disclosure of rebuttal evidence within 20 days after disclosure made by the other party on the same subject matter. The admission of rebuttal testimony is within the sound discretion of the fact-finder and will not be disturbed absent an abuse of that discretion. *Wertz v. People,* 160 Colo. 260, 418 P.2d 169 (1966); *Rice v. Department of Corrections,* 950 P.2d 676 (Colo.App.1997).

■ The rebuttal expert did not value wife's residence. His testimony was admitted for the limited purpose of addressing issues on which the other experts had disagreed: whether sales in the Highlands Ranch area vary between one neighborhood and another and market trends in the area. This testimony was helpful to the court in resolving a basic disagreement between the experts, and there was no surprise to husband. Further, the testimony was cumulative to that of wife's expert who had already testified that homes in various subdivisions of Highlands Ranch differed significantly in value. Thus, the trial court did not abuse its discretion in allowing the admission of this limited testimony.

### III. Property Division

### A.

■ Husband contends the trial court abused its discretion in valuing the marital residence at an amount less than its purchase price. We disagree.

■ Trial courts are vested with broad discretion to fashion an equitable division of the parties' property in a dissolution proceeding. *In re Marriage of Gallo,* 752 P.2d 47 (Colo.1988). The determinations of value and the sufficiency and credibility of the evidence are within the trial court's discretion, and may not be disturbed unless they are unsupported by the record. *In re Marriage of Elmer,* 936 P.2d 617 (Colo.App.1997).

Husband offered the testimony of an expert whose appraisal was based upon comparable homes located in the greater Highlands Ranch area, but not in the more immediate neighborhood of the residence. In contrast, the testimony of wife's expert was based upon comparable homes located within the same or similar subdivision as the wife's residence.

After considering the testimony, the trial court found the testimony of wife's expert more convincing as to the impact of location on the value of homes within various subdivisions of the Highlands Ranch area. In explaining why the residence had decreased in value, wife's expert stated that when an area continues to expand, the market cannot support the value of an older home if a new home with personalized features can be purchased for less than a used one. The weighing of the evidence is within the trial court's discretion, and we perceive no basis for reversal in the court's valuation of the residence.

### B.

Husband next contends the trial court failed properly to assess the value of wife's interest in the medical corporation. We disagree.

■ The weight to be accorded to the valuation techniques of an expert is for the trial court's determination. *In re Marriage of Bookout,* 833 P.2d 800 (Colo.App.1991).

Here, the trial court found that wife's expert was more persuasive as to the value of her interest in the medical corporation. That expert used as one alternative a capitalization of excess earnings and explained the reasons for his original and final calculations. He also explained the reason why certain figures used in his computation were inaccurate and stated his opinion that the effect of such errors on his ultimate valuation was minor.

The expert initially arrived at a value of $118,721, but also concluded that wife's interest could not be worth less than $169,000 which she had paid for her interest in the practice. The expert testified that a new physician entering the business would pay $164,000, when reduced to present value.

The court rejected the opinion of husband's expert concerning the value of wife's interest in the practice because it found that the value the expert placed on wife's interest was contrary to the actual buy-in costs of a new physician. Nor was it reduced to present value. The court concluded that wife's interest should be valued at $169,000.

Again, because it was for the trial court to determine the credibility of the experts concerning the value of wife's interest in the medical practice, we perceive no error in this determination.

Husband claims that the court's finding that a "new physician entering the business today would pay approximately $164,000" was contrary to the evidence. But, read in context, the court simply considered the fact that a new physician would have to pay $3,885 per month for five years or a total of $233,100. The court reduced that amount to its present value. Such reduction was based upon wife's expert testimony.

### C.

However, we do agree with husband that the trial court failed to award him an equitable share of wife's interest in the medical practice.

The value of goodwill incident to a practice constitutes property or an asset acquired during the marriage. *See In re Marriage of Bookout, supra; In re Marriage of*

*Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979). In *Bookout,* a division of this court rejected the argument that an order of maintenance and child support, based upon the same income stream that was used to capitalize excess earnings for the purpose of valuing a business, constituted a double recovery.

Here, in awarding wife all of her interest in the medical practice, the trial court stated that:

> [V]irtually all of the marital asset[s] listed on the asset summary were acquired based upon the earnings of the [wife]. Therefore, because the court has equitably divided the marital property between the parties, it would be inequitable for the court to additionally credit the [wife] with a value for her interest in [the practice]. To do so, would create a double credit to the [husband] ... because the assets acquired with the [wife's] earnings have already been divided between the parties, and to now once again divide the "value" of the [wife's] interest in [the practice] would constitute an unfair windfall to the [husband].

The trial court erred in failing to credit wife with the value of that asset, to husband's detriment. *See In re Marriage of Bookout, supra; In re Marriage of Nichols, supra.* Hence, it is necessary to remand this matter for the trial court to reconsider the property division *after including* the value of the practice as a marital asset that was awarded to wife. However, we do not disturb the property division to which the parties stipulated.

### D.

Husband next contends the trial court did not equitably divide the personal property and that such failure demonstrated an abuse of discretion and bias toward him. According to husband, wife received a disproportionate amount of personal property, and the trial court should have ordered an offset of other money or property to him. We are not persuaded.

The division of property must be equitable, not equal. *See In re Marriage of Stumpf,* 932 P.2d 845 (Colo.App.1996). Therefore, the trial court was not required to

order an offset for all marital property awarded to either party. *See In re Marriage of Fenimore,* 782 P.2d 872 (Colo.App.1989).

Here, the parties disagreed as to the value of the personal property. Husband valued certain items at their replacement value, and testified that he wanted certain items, rather than simply their value, and that he already possessed some items that were listed. Wife asserted that husband had overvalued the property and claimed that husband had obtained whatever items he wanted.

Under these circumstances, we conclude it was within the trial court's broad discretion to order that each party retain the personal property in his or her possession, without any offset.

### IV. Maintenance

■■■ Husband next contends the trial court abused its discretion by limiting his maintenance to $2000 per month for two years, that the trial court's determination of wife's monthly income was contrary to the evidence, and that the amount of maintenance awarded to him is deficient because wife's monthly income exceeds her stated monthly needs by $8500, while his standard of living has decreased considerably from what the parties enjoyed during their 15–year marriage.

However, because we have reversed a portion of the property division award and the issues of property division, maintenance, and attorney fees are inextricably intertwined, we are unable to evaluate the propriety of the court's award regarding maintenance. *See In re Marriage of Simon,* 856 P.2d 47 (Colo. App.1993); *In re Marriage of Wormell,* 697 P.2d 812 (Colo.App.1985).

■■■ A trial court has broad discretion in determining the amount and duration of a maintenance award, *In re Marriage of Huff,* 834 P.2d 244 (Colo.1992); and absent an abuse of discretion, a trial court's order will not be reversed. *In re Marriage of Huff, supra.*

■■■ The standard of living established during the marriage is one of the pertinent factors in determining the amount and duration of maintenance. The trial court must consider the recipient spouse's reasonable needs, although it is not required to ensure that the spouses have an equal lifestyle forever. For purposes of maintenance, the determination of the payor's income is relevant to the extent that it is indicative of that spouse's ability to meet his or her own needs while meeting those of the payee spouse. *In re Marriage of Sim,* 939 P.2d 504 (Colo.App.1997).

■■■ While the purpose of maintenance is not to ensure that the parties have an equal lifestyle forever, the court must consider the reasonable needs of a spouse, which depend on the particular facts and circumstances of the parties' marriage. *In re Marriage of LeBlanc,* 800 P.2d 1384 (Colo. App.1990). The court also should state the reasons upon which it bases the duration of the award. *In re Marriage of Fisher,* 931 P.2d 558 (Colo.App.1996).

Here, the trial court found that: (1) husband met the threshold of need entitling him to maintenance; (2) his potential for growth in his income and employment was bright and he anticipated being able to earn a comfortable living within the near future; and (3) the length of the marriage and the level of comfort enjoyed by the parties justified maintenance for a limited time.

The court determined that wife's income was $19,500 per month. Although husband previously had earned $40,000 per year as a glazier, he had not been employed in that position since 1989. There was also testimony that his monthly expenses were $2700, and he was expected to be self-supporting in five years. On remand, the court should reconsider the amount and duration of maintenance after correcting the property division and after taking into account all applicable factors.

### V. Child Support

#### A.

■■■ Husband next contends the trial court erred as a matter of law in ordering him to pay child support to wife because her income exceeded his income and because the

application of worksheet B required wife to pay him support. We disagree.

Shared physical care means that each parent keeps the children overnight for more than 92 overnights each year *and* that both parents contribute to the expenses of the children in addition to the payment of child support. Section 14–10–115(8), C.R.S.1999. However, there is no statutory requirement that a particular amount be proven by the parent seeking a support adjustment for shared physical care. *In re Marriage of Redford,* 776 P.2d 1149 (Colo.App.1989).

Worksheet B is used to calculate child support when the parties share custody. It incorporates the 1.5 multiplier mandated by § 14–10–115(10)(c), C.R.S.1999, which is based upon the presumption that certain basic expenses for the children will be duplicated when the parties share physical care of a child.

In its initial permanent orders, the trial court here found that husband "has been active in his contributions to child care activities, and it is anticipated that those contributions will continue in the future." The court added in its amended permanent orders that husband had not presented sufficient evidence concerning the nature or extent of the financial contributions, if any, that he had made on behalf of the child.

The court concluded that it would be anomalous and against public policy to require the primary caretaker of the child, who exerts most of the time and money in caring for the child, to pay child support to the non-primary caretaker. It relied upon § 14–10–115(14)(b), which provides that:

> In no case, however, shall the amount of child support ordered to be paid exceed the amount of child support that would otherwise be ordered to be paid if the parents did not share physical custody.

The quoted portion of § 14–10–115(14)(b), was added to the child support guideline in 1991. *See* Colo. Sess. Laws 1991, ch. 38, at 237. It was in direct response to the 1990 recommendation of the Colorado Child Support Commission, which observed that:

> The amount of child support is calculated differently when the number of overnights with each parent exceeds 25 percent. This takes into account the increased expenses of the parent with less time and the reduced burden on the parent with the majority of time. Due to an idiosyncrasy in the statute, the shared custody adjustment sometimes results in an increase in child support instead of a decrease, contrary to legislative intent.

*Colorado Child Support Commission Report* 19 (1990).

The trial court also concluded that the parties' income exceeded the statutory guidelines and that: (1) the needs of the child and public policy would be best met by requiring husband to carry a more significant share of the financial obligations of raising the child; (2) that husband's income was such that the imposition of a child support obligation would not unduly burden him; and (3) the child's emotional well-being would be enhanced if both parents contributed to her financial support.

Therefore, as an alternative basis for its ruling, the court chose to exercise its discretion by ordering husband to pay $290.95 per month child support to wife as calculated under worksheet A. As the trial court found, if a worksheet B analysis were to be applied in this case, the amount of child support payable by wife would exceed the amount that she could be ordered to pay under application of worksheet A.

Nevertheless, it does not appear that the General Assembly contemplated the specific circumstance here in which the application of the shared custody formula results in an award of child support payable from, rather than to, the parent who is the primary caretaker. Nor do we agree with the trial court that public policy would necessarily be defeated if the court were to apply worksheet B to the circumstances of a case in which application of the shared custody formula resulted in the payment of child support to the non-custodial parent.

In fact, in *In re Marriage of Fest,* 742 P.2d 962 (Colo.App.1987), a division of this court recognized that a trial court could conceivably order a custodial parent to pay child support to the non-custodial parent. *In re*

*Marriage of Fest, supra,* was decided before the child support guidelines were adopted, and the division relied on the introductory language of § 14-10-115(1), C.R.S.1999. That language provides that "the court may order either or both parents to pay an amount reasonable or necessary for the child's support." That introductory language has remained unchanged, despite numerous amendments to the child support guidelines.

Accordingly, we cannot say that the application of a shared custody formula which results in a support payment by the custodial parent to the noncustodial parent is prohibited.

Nevertheless, here, because the parties' income exceeded the guidelines, a rebuttable presumption arose that *$290.05 was the minimum amount of support,* and it was husband's burden to overcome that presumption. Sections 14-10-15(3)(a) and 14-10-115(10)(a), C.R.S.1999. *See In re Marriage of Van Inwegen,* 757 P.2d 1118 (Colo.App.1988). Given the trial court's finding of an absence of evidence from husband establishing that he contributed to the child's financial needs, there was no basis for application of the shared custody formula under worksheet B.

Under these circumstances, we therefore conclude the trial court did not err as a matter of law in ordering husband to pay the minimum child support of $290.05 per month to wife.

### B.

Husband next contends the evidence does not support the court's determination that wife's income was $19,500 per month. He maintains that her income was actually $22,500 per month. We disagree.

The trial court found that wife earned $19,500 per month gross income, apparently based on the amount of income she claimed for a five-month average on her financial affidavit. Although her 1997 pay stubs, which she verified as accurate, showed that she had earned $270,000 as a senior physician after deduction of her pension, the record also shows that she was decreasing her monthly work hours to reduce stress, and to spend more time with their child. Husband

has not argued that she is voluntarily underemployed.

Because there is record support for the trial court's determination of wife's income, we may not disturb it on review.

### VI.  Attorney fees

■ Finally, husband contends that the award of $10,000 toward his attorney fees constituted an abuse of discretion by the trial court because he incurred $41,000 in fees, and because of the parties' financial disparity. As noted earlier, however, because we have reversed a portion of the property division, the attorney fee issue must also be reconsidered. *See In re Marriage of Simon, supra; In re Marriage of Wormell, supra.*

We do conclude that this appeal is not frivolous and therefore reject wife's request for attorney fees on appeal. Husband's request for attorney fees on appeal pursuant to § 14-10-119, C.R.S.1999, is a matter that may be addressed by the trial court upon application after remand. *See In re Marriage of Folwell,* 910 P.2d 91 (Colo.App.1995).

The portions of the judgment concerning distribution of wife's interest in the medical practice and the offsetting award to husband, as well as the determination of maintenance and attorney fees are reversed, and the cause is remanded with directions. In all other respects, the judgment is affirmed. Husband's receipt of $150,000 in retirement funds will necessarily precede the trial court's reconsideration of the issues remanded, as it did prior to the initial entry of permanent orders.

Judge MARQUEZ and Judge DAILEY concur.