**In re the MARRIAGE OF Max A. NEVAREZ, Jr., Appellee,**

**and**

**Lourdes A. Nevarez, Appellant.**

**No. 06CA0425.**

Colorado Court of Appeals,
Div. III.

Sept. 6, 2007.

Robert B. Warren, Colorado Springs, Colorado, for Appellee.

Frederick W. Newall, Colorado Springs, Colorado, for Appellant.

Opinion by Judge BERNARD.

In this legal separation proceeding, Lourdes A. Nevarez (wife) appeals from the final orders regarding property division, maintenance, and attorney fees. We reverse and remand for further proceedings.

## I. Background

In November 2004, Max A. Nevarez, Jr. (husband) petitioned for a legal separation from wife. They had been married for twenty-nine years.

The final orders hearing was held in December 2005. The trial court determined that husband's interest in Colorado Springs Health Partners, LLC, and its affiliate, Medical Center, LLP (together, the partnership), constituted marital property. This case involves the issue of how to value husband's interest in that property.

Husband argued the court should look to the partnership agreement and calculate the value based upon the partnership interest's net present value, determined in accordance with the partnership agreement's rules regarding payments to departing partners, and in accordance with his intention to retire in ten years. The chief financial officer of the partnership explained that, if husband chose to withdraw from the partnership, he would be entitled to a refund of his $10,000 capital contribution. The partnership could also choose either to buy out his partnership share, then $95,000, by making a cash payment within six months at a fifteen percent discount, or to extend payments over five years.

The chief financial officer stated the value of husband's partnership interest had decreased during the past two years, and the value was likely to decline further when two other doctors left the partnership at the end of the year. She also testified regarding the methods used by the partnership to determine the market value of its assets and liabilities.

The trial court found the only parties who had standing to challenge the partnership's valuation were the partners; wife did not have standing to do so; and, even if she had had standing, she had failed to show that the values used by the partnership were "inappropriate." Accordingly, the court found that the chief financial officer's testimony was "a starting point and an ending point" in analyzing the value of the partnership interest. The trial court found its net present value was $58,093.

The court also heard the testimony of an appraiser retained by wife, who described his review of two of the partnership's properties and opined that at least one of the properties had been undervalued both as to its sales price and as to the rent charged. The evidence wife offered concerned only two properties in which the partnership had some interest, and did not address the full value of either the partnership or husband's partnership interest. Relying on this partial information, wife argued husband's evidence undervalued his partnership interest by $28,849. The chief financial officer explained why the values assigned by the partnership to these two properties differed from the values suggested by wife's expert.

The court accepted husband's calculation of the net present value of his partnership interest, and used that value for the purpose of dividing the marital property. Husband was ordered to pay maintenance to wife in the amount of $1750 per month for ten years, and to pay $4000 toward her attorney fees.

## II. Marital Property

Wife contends the trial court abused its discretion in the division of marital property. We agree in part.

### A. The Partnership Interest

We agree with wife that the trial court must reconsider the valuation and division of husband's partnership interest.

#### 1. Standing

Wife argues the court erred in finding she had no standing to challenge the partnership's valuation of husband's partnership interest. We agree.

 To determine standing, we must consider whether a party is injured in fact and whether the injury was to a legally cognizable interest. Injury in fact may be shown by establishing the conduct complained of caused, or threatened to cause, injury. *Am. Comp. Ins. Co. v. McBride,* 107 P.3d 973, 976 (Colo.App.2004).

At oral argument, husband agreed the partnership interest was a marital asset. *See* § 14–10–113(3), C.R.S.2006 ("all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property"). Thus, the trial court had jurisdiction to divide the partnership interest equitably between husband and wife. *See* § 14–10–113(1), C.R.S.2006; *In re Marriage of Morehouse,* 121 P.3d 264, 267 (Colo.App.2005); *In re Marriage of Piper,* 820 P.2d 1198, 1200 (Colo.App.1991) ("The value of a professional practice acquired during marriage is subject to equitable distribution.").

When concluding wife did not have standing to attack the partnership's valuation, the trial court indicated it had to be "cautious" before it "completely upset the apple cart" by valuing the partnership in a way that could affect the many partners who were not before the trial court. To the extent this determination was a finding that wife lacked standing to argue those valuations were incorrect or otherwise unsuitable for the purpose of valuing and dividing the marital property in the separation proceeding, we agree the court erred. *See In re Marriage of Keyser,* 820 P.2d 1194, 1197 (Colo.App.1991).

 Because the trial court had jurisdiction to divide the partnership interest equitably, wife had a legally cognizable interest in its value. By contesting the partnership's valuation, wife contended the partnership's valuation injured her legally cognizable interest. This contention is a claim of an injury in fact. Accordingly, wife had standing to challenge the use of the partnership's valuations in the separation proceedings.

This conclusion does not end our inquiry, however. The trial court alternatively held it would reject wife's testimony about the value of the partnership interest and adopt husband's proof. We now turn to the issue of whether the trial court abused its discretion in making that choice.

#### 2. Methods of Valuing a Professional Partnership

 When valuing a business or professional practice in a marriage dissolution or legal separation case, a court "must consider both the tangible and intangible assets, including the accounts receivable, the value of work in progress, and goodwill." *In re Marriage of Piper, supra,* 820 P.2d at 1200. The price, or pricing formula, fixed in a partnership or corporate buy–sell agreement is not dispositive, but must be considered in light of its provisions and all the circumstances pertinent to the agreement. *In re Marriage of Keyser, supra,* 820 P.2d at 1197. This is because, as noted in *In re Marriage of Keyser, supra,* "[t]he price established for buyout purposes ... is often artificial and does not always reflect true value." *In re Marriage of Keyser, supra,* 820 P.2d at 1197 (quoting *Bosserman v. Bosserman,* 9 Va.App. 1, 6, 384 S.E.2d 104, 108 (1989)). Thus, in most jurisdictions, the price fixed in a partnership buy–sell agreement is not considered binding on

the other spouse for equitable distribution purposes when the other spouse did not consent to it and is not otherwise bound by its terms. A division of this court has applied the majority rule on this point, *In re Marriage of Keyser, supra,* 820 P.2d at 1197, and we agree with this decision.

■■■ Although partnership agreements are not binding on trial courts in dissolution of marriage proceedings, "a trial court may consider various valuation methods, including a partnership agreement. The decision as to which valuation method to rely on is a factual determination to be made by the trial court." *In re Marriage of Huff,* 834 P.2d 244, 257 n. 17 (Colo.1992).

The valuation method used by the district court in *Huff* was the "excess earnings method, which is a generally accepted method for determining the present value of someone's interest in a business." *In re Marriage of Huff, supra,* 834 P.2d at 256. The supreme court approved of this method, observing:

> The excess earnings valuation method is an appropriate valuation in a dissolution proceeding because it provides the present value of the partnership interest to the participating spouse and "avoids the problem of valuing a business on the basis of post–divorce earnings and profits."

*In re Marriage of Huff, supra,* 834 P.2d at 256 (quoting Alan S. Zipp, *Divorce Valuation of Business Interests: A Capitalization of Earnings Approach,* 23 Fam. L.Q. 89, 102 (1989) ); *see also In re Marriage of Bookout,* 833 P.2d 800, 804–05 (Colo.App.1991) ("[T]he value of goodwill should be measured by arriving at a present value based upon past results and not by accounting for the post–marital efforts of the professional spouse.").

### 3. Valuation of the Professional Partnership

Wife contends the court abused its discretion by arbitrarily rejecting her expert's valuation of certain properties owned in part by the partnership; by finding she lacked standing and thus "tainting" its valuation of the partnership interest; and, because the partnership interest was vested and subject to immediate distribution, by failing to value the partnership interest as if it were to be imme-

diately withdrawn. We disagree with the first two contentions, but we are persuaded by the third.

#### a. Partnership Interest

■■■ Determinations of the value of property are within the trial court's discretion and will not be disturbed if they are reasonable in light of the evidence as a whole. *In re Marriage of Lewis,* 66 P.3d 204, 206 (Colo.App.2003). A trial court may select the valuation of property presented by one party over the valuation offered by the other, or assess value based upon its own calculations. We will uphold such a determination on appeal unless it is clearly erroneous. *In re Marriage of Fiffe,* 140 P.3d 160, 164 (Colo.App.2005). The weight to be given to valuation techniques used by experts is for the trial court to decide. *In re Marriage of Antuna,* 8 P.3d 589, 593 (Colo.App.2000).

■■■ The trial court's concern about the sufficiency of the evidence offered by wife was reasonable. With the exception of the evidence from the appraiser about the value of the two properties, wife did not present any other evidence to contest husband's evidence of the value of this partnership interest. Wife did not claim husband's proof was missing components important to the valuation of a professional partnership, such as evidence of its tangible and intangible assets, its accounts receivable, the value of any work in progress, or its goodwill. Aside from the evidence already described, wife did not present any evidence to establish the value of husband's partnership interest. As a result, the trial court was unable to employ the "excess earnings" method of valuation, endorsed by *In re Marriage of Huff, supra,* 834 P.2d at 256.

Rather, based upon the record the parties made, the trial court had a single choice when valuing husband's partnership interest, which was between the value described by the partnership's representative and the enhanced value based upon the testimony of a real estate appraiser who only evaluated a portion of the partnership's assets. We cannot say the trial court abused its discretion in adopting, as a question of fact, the partner-

ship agreement as the proper valuation method, *see In re Marriage of Huff, supra,* 834 P.2d at 257 n. 17, or in rejecting the appraiser's testimony and relying upon the figures contained in the partnership agreement. *See In re Marriage of Antuna, supra,* 8 P.3d at 593.

The trial court's findings were reasonable and supported by evidence in the record, and so we will not disturb them. *See In re Marriage of Lewis, supra,* 66 P.3d at 206; *In re Marriage of Eze,* 856 P.2d 75, 76 (Colo. App.1993) (trial court's determination of the sufficiency, probative effect, and weight of the evidence will not be disturbed on review unless the findings are manifestly erroneous).

### b. Trial Court's Comment

We do not agree with wife's argument that the court's ruling on standing "tainted" its decision to reject wife's evidence of the value of the partnership interest. Noting "the calculations are complicated and multifaceted and a party cannot take two properties out of the equation to value the partnership," the court specifically found that "even if [wife] had the standing to challenge the numbers," she had failed to show husband's interest was undervalued by the partnership.

Wife claims a statement the trial court made when discussing standing indicated the trial court imposed an unfair burden on her to refute husband's evidence of the value of his partnership interest. During its oral ruling, the trial court stated the partnership agreement was an arm's length agreement among the various doctor partners, and they would be "smart enough to protect their own interests and challenge incorrect valuations." The trial court then indicated "information of a fairly significant and onerous standard" would be necessary to convince the court the calculations submitted by the partnership were improper.

As noted earlier, the trial court entered alternative findings. Although the court concluded wife did not have standing to challenge husband's valuation of the partnership interest, the trial court also considered wife's valuation evidence.

When viewed in context, the trial court's comments constituted an acceptance of husband's evidence about the value of the partnership interest, and a rejection of wife's evidence. The weight to be given the competing valuation techniques was for the court to decide. *See In re Marriage of Antuna, supra,* 8 P.3d at 593.

### c. Immediate Value

■ It is clear husband's stated intention not to retire for ten years, and thus to delay receiving his partnership interest, cannot be used to deny wife her immediate enjoyment of her share of the partnership interest. *See In re Marriage of Blake,* 807 P.2d 1211, 1213–1214 (Colo.App.1990). Thus, the trial court was required to determine the value of the partnership interest at the time of the decree of legal separation. Section 14–10–113(5), C.R.S.2006 ("[P]roperty shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree."); *In re Marriage of Huff, supra,* 834 P.2d at 256; *In re Marriage of Martinez,* 77 P.3d 827, 830 (Colo.App.2003).

■ Husband's valuation argument was based on projecting the value of the partnership interest, as calculated at the time of the property division hearing, ten years into the future, and then discounting it. In effect, the trial court treated husband's partnership interest much like a pension, and, based upon husband's statement he did not intend to retire for ten years, calculated its net present value to be $58,093. The trial court concluded this was the amount needed, based upon 5% interest per year, compounded monthly, to grow into a future lump sum of $95,000. We conclude calculating the partnership's present value in this manner was an abuse of discretion.

The analogy between husband's partnership interest and a pension plan may not be appropriate. Unlike a pension, which has predictable future value, the partnership interest could be worth more or less than $95,000 in ten years, based upon a variety of factors that may or may not be predictable.

■ However, assuming, without deciding, that the analogy is appropriate:

> [T]he present value of the marital interest in the pension, i.e., the value of the pension on the date of the dissolution, must take into consideration the earliest projected maturity, or payable, date of the pension. The marital interest in the pension must be measured using the pension that will be received not upon dissolution but, rather, upon the assumed normal future retirement.

*In re Marriage of Nordahl,* 834 P.2d 838, 841 (Colo.App.1992) (citation omitted). This principle leads to the presumption that:

> [T]he employee–spouse will retire on the earliest date upon which the employee–spouse can retire with a normal retirement and a full pension. This calculation will not affect the right of the employee–spouse to voluntarily choose to retire at any time either before or after that date. It merely serves to fix the nonemployee–spouse's interest in the marital portion of the employee–spouse's pension as of the date of the dissolution.

*In re Marriage of Nordahl, supra,* 834 P.2d at 841 (citation omitted).

■ Here, husband's partnership interest was vested and mature. He was entitled to withdraw from the partnership whenever he chose. His ability to withdraw his interest was not subject to any future contingencies. For the purposes of the separation order, the earliest possible date on which husband could retire and be paid his partnership interest was the date of the separation hearing. *See In re Marriage of Nordahl, supra,* 834 P.2d at 841; *In re Marriage of Hurd,* 69 Wash. App. 38, 45–46, 848 P.2d 185, 191 (1993) (present value of a vested and mature pension benefit assumes employee spouse's retirement as of the date of the dissolution).

Therefore, the present value of husband's partnership interest at the time of the property distribution hearing, as described by the chief financial officer, should have been based upon husband's $10,000 stock contribution, plus the cash payment of $95,000 within six months, subject to a fifteen percent discount, or payments totaling $95,000 over five years. It was not $58,093, the amount the trial court awarded based upon the present amount needed to capitalize a future distribution of $95,000.

We therefore conclude the trial court properly relied upon the partnership agreement as the basis for calculating the value of husband's partnership interest. However, the trial court erred in determining the present value of husband's partnership interest to be $58,093. We remand to the trial court to recalculate the value of the marital property, based upon the direction provided in this opinion, and redivide the marital property accordingly.

B. Allocation of Debt and Other Property

Wife argues the trial court abused its discretion in its division of the marital debt and in its allocation of, or failure to allocate, certain specific debts and specific items of property. We reject this argument.

■ The trial court has great latitude to effect an equitable distribution of marital property based on the facts and circumstances of each case. Thus, on review, an appellate court must not disturb a trial court's decision regarding division of property unless there has been a clear abuse of discretion. *In re Marriage of Balanson,* 25 P.3d 28, 35 (Colo.2001).

■ Allocation of the debts of the parties is in the nature of property division. *In re Marriage of Speirs,* 956 P.2d 622, 623 (Colo. App.1997). Here, the court found that the marital debt and properties should be divided equally, and that such a division would be equitable. The court also found the amount of the marital debt was well supported by all the evidence; there was no dispute as to the actual values of the vehicles; and husband's trade–in of his vehicle was not "opportunistic."

We do not agree with wife's assertion that the court abused its discretion in dividing the marital debt equally, despite husband's greater earning capacity. Under § 14–10–113(1)(c), C.R.S.2006, the court is required to consider the economic circumstances of each spouse when dividing marital property. However, this is only one of several factors the court must consider, and we are not persuaded an equal division of debt and

property in the circumstances present here was so unreasonable as to constitute an abuse of the court's discretion.

As for wife's objections to the court's treatment of certain specific debts and specific assets, we note it does not appear wife questioned the accuracy of the total amount of marital debt as set forth in the proposed property division submitted by husband to the court. Nor did she request the trial court adjust the amount of marital debt to correct the alleged errors she has identified to this court. Because these issues were not raised before the trial court, we will not consider them. *See In re Marriage of Atencio,* 47 P.3d 718, 722 (Colo.App.2002) (arguments not presented to the trial court may not be raised on appeal).

III. Maintenance and Attorney Fees

■ Wife contends the trial court abused its discretion by awarding her insufficient maintenance, by failing to set forth the reasons upon which it based the duration of the maintenance award, and by awarding her insufficient attorney fees. Because we reverse the trial court's property division order and remand this case for further proceedings, the trial court will be required to reconsider the issues of maintenance and attorney fees after correcting the property division and considering all applicable factors. *In re Marriage of Antuna, supra,* 8 P.3d at 595 (because issues of property division, maintenance, and attorney fees are "inextricably intertwined," appellate court is unable to "evaluate the propriety" of maintenance and attorney fee awards when property division is reversed).

The judgment is reversed, and the case is remanded to the trial court for reconsideration of the property division award pursuant to the direction provided in this opinion. On remand, maintenance and attorney fees are to be awarded in light of the trial court's property division and all other applicable factors.

Judge ROY and Judge FURMAN concur.