24CA1234 Marriage of Montes-Gomez 09-25-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1234
Garfield County District Court No. 21DR118
Honorable Elise Myer, Judge

---

In re the Marriage of

Susana Vasquez-Gonzalez,

Appellee,

and

Sergio Montes-Gomez,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 25, 2025

---

Garfield & Hecht, P.C., Eric D. Musselman, Aspen, Colorado, for Appellee

Defiance Law Firm, Peter A. Rachesky, Lara Horst, Glenwood Springs,
Colorado, for Appellant

¶ 1    In this dissolution of marriage case between Sergio Montes-Gomez (husband) and Susana Vazquez-Gonzalez (wife), husband appeals the portions of the permanent orders concerning the property division and maintenance. We affirm the judgment in part, reverse the judgment in part, and remand to the district court for further proceedings.

## I.    Background

¶ 2    The parties married in 2001 and separated in 2021. In 2024, the district court dissolved their marriage and entered permanent orders.

¶ 3    In dividing the marital property, the court awarded husband $327,458, or roughly 42%, of the marital estate, including three real properties the parties owned in Mexico. It awarded $460,679, or roughly 58%, of the marital estate to wife, including two real properties the parties owned in Mexico and the parties' Colorado mobile home. The court awarded wife $359 per month in maintenance for ten years.

## II.    Property Division

¶ 4    Husband asks us to reverse the court's unequal division of marital property because he asserts it's not equitable.

1

## A. Applicable Law and Standard of Review

¶ 5 The court has great latitude to equitably divide the marital estate in such proportions as it deems just. *See* § 14-10-113(1), C.R.S. 2025; *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. The property division must be equitable, but it doesn't have to be equal. *In re Marriage of Wright*, 2020 COA 11, ¶ 3. "The key to an equitable distribution is fairness," which depends on the facts and circumstances of each case. *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988); *accord Wright*, ¶ 3.

¶ 6 To determine an equitable division, the court should consider "all relevant factors." § 14-10-113(1). Relevant factors may include, but are not limited to, the parties' contributions to the acquisition of marital property, the value of property set aside to each party, and the parties' economic circumstances. *Id.* Determining how to weigh the relevant factors when making an equitable allocation is within the court's sound discretion. *In re Marriage of Smith*, 2024 COA 95, ¶ 67.

¶ 7 We may not disturb a court's property division absent a showing that the court abused its discretion. *Medeiros*, ¶ 28. A court abuses its discretion when it acts in a manifestly arbitrary,

unreasonable, or unfair manner, or it misapplies the law. *Id.*; *see Hall v. Moreno*, 2012 CO 14, ¶ 54 (explaining that, when reviewing a court's discretionary decision, we consider whether the decision fell within the range of reasonable options, not whether we would have reached a different result).

## B. Discussion

¶ 8      When determining how to allocate the marital estate, the court acknowledged the applicable legal standard and summarized the conflicting evidence. Then, the court discussed the relevant factors under section 14-10-113(1) and made detailed factual findings.

¶ 9      The court found that the parties owned five debt-free properties in Mexico, which they both financially contributed to during the marriage, and that they owned a mobile home in Colorado (though not the land on which the mobile home sits) where they resided together until 2021. Husband wanted all the properties sold and the proceeds split evenly, but wife preferred to retain the mobile home and two of the Mexico properties — Bella Italia and Montes de Alaska. Having considered both parties' employment and other economic circumstances during the marriage and at the time of the hearing, the court found that wife

was the primary caregiver for the parties' now-adult daughter during the marriage, while husband often worked extra jobs in addition to his regularly scheduled work shifts and made more money than wife; the parties both contributed to the household expenses for the mobile home while they were together, but that wife had been solely responsible for the mobile home's upkeep and lot rent since the parties' separation; some of wife's family lived on the Montes de Alaska property; and that Bella Italia was previously owned by wife's father and wife had grown up there.

¶ 10    After considering these circumstances and making findings about the value of the parties' real and personal property, the court divided the marital property between husband and wife. The court awarded three Mexico properties to husband: Gustavo Diaz, where husband's mother resided; Zicacalco, which housed a mechanic shop and for which husband received rent; and Margarita, which had the highest value. The court awarded wife the Montes de Alaska property, the Bella Italia property, and the parties' mobile home. The court awarded each party the vehicle they had been using while the petition for dissolution was pending and awarded husband a motorcycle. The court awarded husband his clothes, a

4

bike, and his tools, and the remainder of the parties' household items were awarded to wife. And the court awarded each party bank accounts worth similar amounts.

¶ 11    Husband argues on appeal that the property distribution was "extremely one sided." He also argues that, because the court found that the parties historically shared financial expenses and both contributed to the acquisition of the properties, the court's decision to award to wife the most valuable property — the mobile home — was erroneous. We aren't persuaded.

¶ 12    The court considered ordering the sale of all the properties as husband requested, but it found that doing so would be inequitable because the parties' relatives lived on some of the Mexico properties and at least one property had been in wife's family for some time. Accordingly, the court awarded three Mexico properties to husband, including the property with the highest value, to "offset other awards to wife." Moreover, the court found that wife had lived in the mobile home for more than ten years, wished to remain living there, and had been maintaining the home — including paying the lot rent — on her own for three years during the parties' separation.

¶ 13    Despite acknowledging in his opening brief that there is no requirement that the court "divide property with precise equality in order to achieve an equitable division," husband baldly asserts that the property distribution was inequitable — and therefore an abuse of discretion — because it was disproportionate. But the record demonstrates that the court considered the sufficiency and credibility of the evidence presented to it in reaching its findings. *In re Marriage of Antuna*, 8 P.3d 589, 593 (Colo. App. 2000).

¶ 14    Because there was conflicting evidence, it was within the court's purview to resolve it. *See In re Marriage of Tooker*, 2019 COA 83, ¶ 31 ("[A]ny inferences and conclusions to be drawn from the conflicting evidence were for the district court to resolve."); *see also In re Marriage of Evans*, 2021 COA 141, ¶ 45 ("We are not at liberty to re-evaluate the conflicting evidence and set aside findings supported by the record."). And given the court's record-supported findings — which weighed the parties' economic and noneconomic contributions during the marriage, current economic circumstances, and other relevant circumstances as required by section 14-10-113 — we don't agree with husband that the court abused its discretion in dividing the parties' property. *See Antuna,*

8 P.3d at 594-95 (affirming court's record-supported disproportionate, but equitable, distribution of property); *see also In re Marriage of Sorensen*, 679 P.2d 612, 613 (Colo. App. 1984) (affirming facially disproportionate property division supported by particular circumstances of the case).

¶ 15    We therefore affirm the portion of the judgment allocating the marital property.

### III.    Maintenance

¶ 16    Husband also asks us to reverse the portion of the permanent orders concerning maintenance because, he asserts, (1) he received ineffective assistance of counsel with respect to the court's consideration of maintenance and (2) the court's findings supporting its maintenance determination were inadequate.

### A.    Ineffective Assistance of Counsel

#### 1.    Additional Facts

¶ 17    Wife didn't request maintenance in her petition for dissolution. The court acknowledged this but found that husband was aware that wife would request it at the permanent orders hearing because the parties set forth their positions on maintenance in the joint trial management certificate.  At the permanent orders hearing,

husband's counsel didn't object to the court's consideration of wife's maintenance request. Indeed, husband's counsel argued the merits of the request. Thus, the court found that husband consented to the court addressing wife's maintenance request.

## 2. Discussion

¶ 18 Husband doesn't challenge the court's finding that he consented to the court considering wife's maintenance request but alleges that his attorney's failure to object when the issue was raised at the permanent orders hearing constituted ineffective assistance of counsel. Husband acknowledges that there is no statutory right or case law precedent recognizing a claim for ineffective assistance of counsel in dissolution of marriage cases. But he argues that we "should expand the doctrine[] and make [an ineffective assistance of counsel claim] cognizable" in this context. We decline to do so.

¶ 19 There is no constitutional or statutory right to counsel in dissolution of marriage cases. *See In re Marriage of Hartley*, 886 P.2d 665, 674 n.16 (Colo. 1994). Accordingly, if husband believed that his attorney was not representing him competently, it was up to him to fire the attorney and hire another, or to represent himself.

His attorney's actions or inactions in representing him, whether competent or not, aren't a basis for reversing the court's orders. *Cf. Nelson v. Boeing Co.*, 446 F.3d 1118, 1119 (10th Cir. 2006) (the remedy for ineffective assistance in a civil case is a malpractice lawsuit); *Hartley*, 886 P.2d at 674 n.16 (rejecting argument that child was constitutionally entitled to counsel of his choice in his parents' dissolution case).

## B.    Maintenance Award Findings

¶ 20    Husband contends that the court erred because it failed to follow the statutory procedure for determining maintenance and its findings (or lack thereof) didn't support its determinations (1) that wife lacked sufficient property to meet her reasonable needs; (2) about wife's gross income; and (3) that wife was unable to meet her own reasonable financial needs using her own income. Because we agree with husband's first and second contentions — both of which inform whether wife could meet her own reasonable financial needs — we decline to address his third and remand with instructions.

### 1. Standard of Review and Applicable Law

¶ 21    We review a court's maintenance award for an abuse of discretion, deferring to the court's record-supported factual findings but reviewing de novo whether the court correctly applied the law. *Medeiros*, ¶ 58. Section 14-10-114(3), C.R.S. 2025, sets forth the process a court must follow when considering a maintenance request. *Wright*, ¶ 13.

¶ 22    A court's determination of maintenance is a three-step process. *See id.* at ¶¶ 13-16. The court must first make specific written or oral findings regarding, as relevant here, the financial resources of each party, including any actual or potential income from marital property and the amount of each party's gross income. § 14-10-114(3)(a)(I)(A), (C); *see Wright*, ¶¶ 14, 19.

¶ 23    The court then must determine an amount and term of maintenance that is fair and equitable to the parties by considering the statutory advisory guidelines and a list of nonexclusive statutory factors. § 14-10-114(3)(a)(II)(A)-(B), (3)(b), (3)(c); *Wright*, ¶ 15. Among the factors the court must consider is the requesting spouse's ability to meet their needs independently, including whether the requesting spouse has potential income from marital

property and the recipient spouse's employment, income, and employability. § 14-10-114(3)(c)(I), (V). The court is not required to make specific factual findings about each factor, so long as its decision gives the reviewing court a clear understanding of the basis of its order. *Wright,* ¶ 20.

¶ 24 The last step is for the court to determine whether the requesting spouse qualifies for maintenance, meaning that the spouse lacks sufficient property, including awarded marital property, to provide for the spouse's reasonable needs and is unable to support themself through appropriate employment. *See* § 14-10-114(3)(a)(II)(C), (3)(d); *Wright,* ¶ 16. The court can only consider this last step if the court first makes the findings of fact required under the first two steps. *See* § 14-10-114(3)(d); *Wright,* ¶ 16.

### 2. Analysis

#### a. Sufficiency of Wife's Property

¶ 25 Regarding his first contention, husband specifically argues that the court erred by making inadequate initial findings about wife's available financial resources because it failed to consider the

potential rental income from the properties awarded to wife as required by section 14-10-114(3)(a)(I)(C). We agree.

¶ 26 Section 14-10-114(3)(a)(I)(C) says, in relevant part,

> When a party has requested maintenance in a dissolution of marriage, . . . prior to granting or denying an award of maintenance, the court shall make initial written or oral findings concerning . . . [t]he financial resources of each party, including but not limited to the actual or potential income from separate or marital property . . . .

¶ 27 The parties each submitted as exhibits property valuation reports containing conflicting valuations of the Mexico properties. Both reports were in Spanish. The court noted that the expert who authored wife's report testified in support of his report with the assistance of an interpreter, while husband "did not call a witness to testify in support of, or to explain," the valuations contained in his exhibit.

¶ 28 Wife's expert acknowledged that he included information about potential rental prices for each of the Mexico properties in his report. But he didn't explain in his testimony how he reached the rental valuations in his report or explain whether his valuation was an estimate of monthly rental income, or an estimate of income for

12

some other length of rental term. Wife testified that she didn't receive any rental income from the properties in Mexico, but husband testified that wife was receiving some rental income from one of the Mexico properties at the time of the permanent orders hearing, though he didn't specify an amount. With respect to the mobile home, wife testified that she had previously rented out a room for $700 per month.

¶ 29 The court specifically said that it "consider[ed] the distribution of property when determining maintenance." But the court didn't make specific findings about wife's potential income from the mobile home or the two Mexico properties awarded to her, despite being presented with the above evidence. And because the court was required to make explicit findings about wife's potential income from those properties as part of the first step of its maintenance award analysis, the court abused its discretion by not doing so. *See* § 14-10-114(3)(a)(I)(C); *Wright*, ¶ 19. *But see In re Marriage of Gibbs*, 2019 COA 104, ¶ 24 (holding that where a party has not historically earned rental income from his or her primary residence, potential rental income from that asset cannot be imputed to the party for purposes of calculating maintenance).

13

b. Wife's Income

¶ 30 The court made the following findings about wife's income at the time of the permanent orders hearing:

- Wife was unemployed for a period of time due to an injury she suffered at work. During that time, she received financial assistance from a community organization.

- Wife was working part-time as she recovered from her work-related injury.

- Wife worked between eighteen and twenty hours per week, earning $35 per hour.

- Wife had no income other than her primary employment.

¶ 31 Based on this evidence, the court determined that wife's average work hours were nineteen hours per week and concluded that her gross monthly income was $2,660 per month. The court also concluded that wife "presently has limited earning potential because she continues to recover[] from her ankle injury. Whether [w]ife will be able to return to full-time work remains to be seen, although she is hopeful." Based on the court's income calculations,

14

the court ordered husband to pay wife monthly maintenance of $359 for ten years.

¶ 32    This was error.

¶ 33    As best we can tell, the court concluded that wife's gross monthly income was $2,660 by multiplying wife's hourly salary by the average weekly number of hours she worked and assuming a four-week month (35 dollars per hour x 19 hours per week x 4 weeks per month = 2,660). But all months are not created equal,[1] and there are fifty-two weeks in a year.[2]

¶ 34    Thus, accepting the district court's findings about wife's hourly salary and average hours worked, the court should have calculated wife's gross income to be approximately $2,882 per month (35 dollars per hour x 19 hours per week x 52 weeks per year ÷ 12 months per year = 2,881.67). There is no indication in the record of whether the court considered additional factors (for example, assuming wife had four weeks of unpaid vacation) to arrive at its calculation of wife's monthly income.

---

[1] TechClaw, *How Many Weeks in a Month: Unraveling the Calendar Puzzle*, Medium (Aug. 9, 2023), https://perma.cc/J6C4-ES8P.
[2] Math.net, *Weeks in a Year*, https://perma.cc/G366-F8VG.

¶ 35     And, as just discussed, the court didn't make explicit findings about whether wife had potential income from the proprieties the court awarded to her. Nor did the court adequately explain why wife's income — which was reduced at the time of the hearing due to wife's limited ability to work because of her then-present ankle injury — would continue to be reduced into the future thus supporting a static ten-year maintenance award. *See* § 14-10-114(3)(c)(V).

¶ 36     The court's findings, while generally thorough, don't enable us to understand how it calculated wife's gross income or whether it appropriately considered wife's potential income from the properties it awarded to her. Because both of these considerations inform whether wife was entitled to maintenance, *see* § 14-10-114(3)(a)(I)(A), (C), (3)(a)(II), (3)(d), we must reverse, *see* *Wright*, ¶¶ 16, 19-20.

¶ 37     Accordingly, we reverse the maintenance award and remand to the district court with directions to follow the procedure outlined in section 14-10-114(3). On remand, the court must make the specific findings required by section 14-10-114(3)(a)(I). Any findings supporting its maintenance determination must appropriately

consider the statutory factors and be sufficiently explicit for us to determine the basis for its order on review. *Wright*, ¶ 23. The court may exercise its discretion to receive additional evidence and must consider the parties' current economic circumstances in making its maintenance determination. *See In re Marriage of Capparelli*, 2024 COA 103M, ¶ 28; *see also In re Sharp's Marriage*, 539 P.2d 1306, 1309 (Colo. App. 1975) (noting that a maintenance order must be based on the circumstances at the time of the hearing). However, because no party challenged the property valuations, the court must use the same property valuations from the permanent orders. *Capparelli*, ¶ 26; § 14-10-113(5).

¶ 38    Finally, because husband partially prevailed on appeal, on remand the court must determine whether wife is entitled to her appellate costs under C.A.R. 39(a)(4).

## IV.    Disposition

¶ 39    We affirm the judgment as to the court's allocation of property. We reverse the judgment as to the court's determination of maintenance and remand to the district court for further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE KUHN concur.