Joseph H. BROWN and Helen Jean
Roberson, Plaintiffs–Appellees,

v.

HOLLYWOOD BAR AND CAFE,
Defendant–Appellant.

No. 96CA1713.

Colorado Court of Appeals,
Div. V.

May 29, 1997.

Rehearing Denied July 24, 1997.

Kelly R. McCabe, P.C., Kelly R. McCabe, Cortez, for Plaintiffs–Appellees.

James R. Florey, Jr., Englewood, for Defendant–Appellant.

Opinion by Judge RULAND.

This is an action to recover damages for injuries sustained in an automobile accident. Defendant, Hollywood Bar and Cafe (Hollywood), appeals from the judgment entered on jury verdicts in favor of plaintiffs, Joseph H. Brown and Helen J. Roberson. We affirm.

Plaintiffs were injured when an intoxicated driver crossed the center line of a highway and collided with their vehicle. The record reflects that the driver spent the day, prior to the collision, consuming drugs and alcohol, including alcohol sold at Hollywood and the Sawmill Run Saloon. The accident took place at approximately 4:30 p.m., and the driver still had a blood alcohol content (BAC)

of 0.242 grams of alcohol per 100 milliliters of blood one hour later.

Plaintiffs sued the driver and the driver's parents who owned the automobile involved in the collision. Plaintiffs also sued the Sawmill and Hollywood pursuant to § 12–47–128.5, C.R.S. (1991 Repl.Vol. 5B). Prior to trial, plaintiffs settled their claims with the driver, his parents, and the Sawmill.

Following presentation of the evidence, the jury found that Hollywood had willfully and knowingly sold beer to the driver while he was visibly intoxicated and that such was a cause of the injuries to plaintiffs. The jury also found that plaintiff Brown's damages totaled $515,979 and that plaintiff Roberson's damages totaled $141,645. The jury apportioned 50% of the fault to the driver, 25% to the Sawmill, and 25% to Hollywood. Judgment awarding damages consistent with this apportionment was entered, and this appeal followed.

## I

Hollywood attempted to endorse four additional witnesses approximately 30 days prior to the trial in violation of the 80–day time limit specified in former C.R.C.P. 16(c). In response to a motion to strike the late endorsement, Hollywood withdrew its request as to two of the witnesses. The court ruled that the remaining witnesses could not be called.

Relying upon *J.P. v. District Court,* 873 P.2d 745 (Colo.1994), Hollywood now contends that the trial court erred in refusing to allow the remaining two witnesses to testify. In the alternative, Hollywood argues that the court should have granted its request to continue the trial so that plaintiffs could interview or depose the witnesses. We are not persuaded by either contention.

■ The trial court is vested with broad discretion to determine whether a party should be permitted to endorse witnesses after the date permitted by rule. *See Nagy v. District Court,* 762 P.2d 158 (Colo.1988). Here, unlike in *J.P. v. District Court, supra,* plaintiffs had not requested any prior continuances and the trial date had been set some 10 months earlier. Further, the names of

the witnesses had been revealed in a deposition approximately 16 months before Hollywood filed its motion to endorse them.

Next, Hollywood asked to endorse these witnesses to testify regarding the driver's appearance and conduct at the time he purchased beer from the establishment. However, Hollywood had already endorsed one of its employees to testify concerning this issue. And, Hollywood was permitted to call another witness to testify on this same issue who had only been endorsed in a disclosure statement from the Sawmill. Hence, the proffered testimony would have been cumulative.

Accordingly, based upon these circumstances, we conclude that the trial court did not abuse its discretion in ruling that the witnesses in question would not be allowed to testify.

■ Finally, the decision whether to grant a motion to continue the trial is also an issue addressed to the discretion of the trial court. *See Butler v. Farner,* 704 P.2d 853 (Colo.1985). Here, because the only need for the continuance arose from Hollywood's failure timely to endorse the witnesses in question, the trial court did not abuse its discretion in denying the continuance.

## II

Section 12–47–128.5(3), C.R.S. (1991 Repl. Vol. 5B) provides that a liquor licensee may be liable for an injury resulting from the sale of an alcoholic beverage, if the licensee "willfully and knowingly" serves a beverage to a person who was visibly intoxicated. Hollywood contends that because there was no direct evidence that it willfully and knowingly served alcohol to the driver when he was visibly intoxicated, the trial court erred in failing to grant its motions for summary judgment, directed verdict, and judgment notwithstanding the verdict. We disagree.

■ The denial of a motion for summary judgment may not be appealed following the trial. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996). With reference to the remaining motions, a division of this court, in *Christoph v. Colorado Communications Corp.,* —— P.2d —— (Colo.App. No.

95CA1474, February 20, 1997) held that circumstantial evidence and the inferences from that evidence may be relied upon to prove that a licensee wilfully and knowingly served alcohol to a visibly intoxicated person. We agree with the analysis in *Christoph* and follow it here.

For the reasons stated in *Christoph,* we do not view either *Dickman v. Jackalope, Inc.,* 870 P.2d 1261 (Colo.App.1994) or *Forrest v. Lorrigan,* 833 P.2d 873 (Colo.App.1992) as support for Hollywood's contention.

■ Here, plaintiffs presented circumstantial evidence that the driver was visibly intoxicated at the time he was served beer by Hollywood. Specifically, one of the driver's friends testified that he believed the driver was too intoxicated to drive and offered to drive him home approximately 50 minutes prior to the accident. Additionally, a bartender at Hollywood testified that after she served a beer to the driver at approximately 4:00 p.m., he poured the beer down the front of his shirt. Finally, testimony was presented that, immediately after the accident, the driver displayed visible signs of intoxication.

Viewing these facts in a light most favorable to plaintiffs, as we must, we conclude that the record supports the trial court's rulings. *See Ferguson v. Gardner,* 191 Colo. 527, 554 P.2d 293 (1976).

### III

Plaintiffs endorsed a toxicologist to testify regarding the amount of alcohol consumed by the driver as evidenced by his BAC. The toxicologist did not submit a written report. Instead, he was deposed by Hollywood. During his deposition, the toxicologist stated that he could not express an opinion regarding how noticeable the driver's intoxication would have been on the day of the accident.

■ At trial, the toxicologist testified regarding the signs of intoxication exhibited by the general population at various blood alcohol levels. Hollywood argues that reversal is required because this testimony exceeded the scope of his deposition. We find no reversible error.

Even if we assume that the trial court should not have admitted this testimony, the toxicologist's testimony makes clear that he was describing the impact of various levels of alcohol on the general population and that such might or might not apply to the driver. Conversely, Hollywood presented substantial expert testimony at trial to refute plaintiffs' expert on this subject. Equally important, as noted below, lay testimony was presented relative to the driver's actual condition at relevant times.

As a result, we conclude that Hollywood has failed to show any prejudice from the toxicologist's testimony which would warrant reversal of the judgment. *See Askew v. Gerace,* 851 P.2d 199 (Colo.App.1992).

### IV

Hollywood also contends that the trial court erred in allowing plaintiffs to present the testimony of lay witnesses regarding their observations of the driver after the accident. Specifically, Hollywood contends that this evidence was not relevant to determining whether the driver appeared visibly intoxicated before he was served alcohol at Hollywood. We are not persuaded.

■ Evidence is relevant if it has any tendency to make the existence of any material fact more probable or less probable than it would be without the evidence. CRE 401; *Arnold v. Colorado State Hospital,* 910 P.2d 104 (Colo.App.1995). Further, the trial court is granted wide latitude in determining the relevancy and admissibility of evidence, and its decision may not be disturbed on appeal unless the record reflects a clear abuse of that discretion. *People v. Eggert,* 923 P.2d 230 (Colo.App.1995).

■ Here, given the short time span between the driver's departure from the Hollywood and the accident, we conclude that the witnesses' post-accident observations are relevant to the jury's determination of whether the driver appeared intoxicated while at Hollywood. Therefore, we conclude that the trial court did not err in admitting the lay witness testimony.

## V

Section 12–47–128.5(3) provides in pertinent part:

(a) *No licensee is civilly liable to any injured individual* or his estate for any injury to such individual or damage to any property suffered because of the intoxication of any person due to the sale or service of any alcoholic beverage to such person, except when:

(I) It is proven that the licensee willfully and knowingly sold or served any malt, vinous, or spirituous liquor to such person who was under the age of twenty-one years or who was visibly intoxicated....

. . . .

(c) *In any civil action brought pursuant to this subsection (3), the total liability in any such action shall not exceed one hundred fifty thousand dollars.*

(emphasis added)

■ Consistent with *Smith v. Zufelt,* 880 P.2d 1178 (Colo.1994) and based on the percentage of fault attributed to Hollywood by the jury, the trial court entered judgment against Hollywood in the amount of $128,-994.75 plus interest and costs for plaintiff Brown and $35,411.25 plus interest and costs for plaintiff Roberson. *Smith* requires that if, as here, settlement is reached with a joint tortfeasor, the total damage award must be reduced by the percentage of negligence attributed by the jury to the settling tortfeasor.

Hollywood contends, however, that the trial court erred in its application of § 12–47–128.5(3)(c), C.R.S. (1991 Repl. Vol. 5B). Specifically, Hollywood contends that because all of plaintiffs' claims were brought in one action, their combined total recovery from Hollywood and the Sawmill was limited to $150,-000 because that is "the total liability in any such action." We disagree.

■ We must look to the context in which a statutory term is used in determining its meaning. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). In doing so, we should consider individual sections of a statute together so as to avoid any inconsistencies. *Martinez v. Badis,* 842 P.2d 245 (Colo.1992).

■ Here, § 12–47–128.5(3)(c) provides that the $150,000 liability limit applies to "any civil action brought pursuant to this subsection (3)." However, § 12–47–128.5(3)(a), C.R.S. (1991 Repl.Vol. 5B) describes the civil action as one in which a single licensee is civilly liable to an injured individual. When these two provisions are read together, we agree with the trial court that the $150,000 liability limit applies only as between one licensee and one injured individual.

■ Therefore, regardless of the liability of the Sawmill, Hollywood is liable to each plaintiff for up to $150,000 in damages. Accordingly, we necessarily also conclude that Hollywood is only entitled to the percentage reduction granted by the trial court pursuant to *Smith, supra.*

We find further support for this conclusion in the rule of construction that requires us to assume that a just and reasonable result was intended by the General Assembly. Section 2–4–201, C.R.S. (1980 Repl.Vol. 1B). Specifically, if as Hollywood contends, the statute required plaintiffs to maintain separate actions against each licensee, each plaintiff here would have been required to file separate actions against the Sawmill and Hollywood for a total of four separate cases arising out of the same incident. We view this waste of judicial resources as unreasonable and, thus, a result not intended by the General Assembly.

## VI

Hollywood also contends that plaintiff Brown should not be entitled to interest and costs insofar as those amounts exceed the $150,000 statutory cap. Again, we disagree.

■ Section 12–47–128.5(3)(a) makes clear that the total liability is specified in the statute for any injury to an individual caused by an intoxicated person, and thus, only damages for the injury are included. Therefore, we conclude that the liability cap applies only to the licensee's liability for damages from any injuries, and not for amounts recoverable

as prejudgment interest and costs—items that may be awarded to a plaintiff without regard to the claim involved.

We find further support for this conclusion in *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901 (Colo.1993). In *Scholz*, the supreme court concluded that prejudgment interest was not included within the damages limitation provisions of § 13–64–302, C.R.S. (1996 Cum.Supp.). The court reached this result in part because the damages limitation statute did not specifically include prejudgment interest within the statutory cap. And, prejudgment interest is added to an award of compensatory damages in order to make the injured party whole. We view the same analysis as applicable here.

Accordingly, we conclude that the trial court properly interpreted § 12–47–128.5(3) in entering its judgment.

The judgment is affirmed.

ROTHENBERG and TAUBMAN, JJ., concur.