**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SPRAY SYSTEMS OF ARIZONA,
INC., doing business as Spray Systems
Environmental, an Arizona
corporation, authorized to do business
in the State of Colorado,

      Plaintiff-Appellant,

      v.

LIN-DE, LTD., doing business as
Kristi Lanes, a Colorado corporation,

      Defendant-Appellee.

No. 98-1054
(D.C. No. 95-S-2304)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **EBEL**, and **BRISCOE**, Circuit Judges.

      Plaintiff Spray Systems of Arizona, Inc., initiated this diversity action

alleging defendant Lin-De, Ltd., doing business as Kristi Lanes, was liable under

Colorado's dram shop liability statute, C.R.S. § 12-47-128.5, for workers'

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

compensation benefits paid by plaintiff's insurer to plaintiff's injured employees. Plaintiff appeals the district court's entry of summary judgment in favor of defendant. We affirm.

On September 8, 1994, Richard Collins, Eloy Chaparro, and Ronald Lacen, employees of plaintiff, were engaged in asbestos removal at a mine near Leadville, Colorado. The employees went into Leadville that evening to take showers at a laundromat and to take some ceiling tiles to Jim and Cindy Wiese, the owners of Kristi Lanes. After they delivered the tiles to the Wieses' residence, the employees went to the Kristi Lanes lounge. Each employee recalled consuming two twelve-ounce beers at the lounge, but Chaparro thought he might have consumed an additional beer before going to the lounge. Cindy Wiese recalled serving two beers to each employee, and Anthony Mascarenaz, another patron in the lounge, testified during the time he was in the lounge the employees each drank no more than two beers.

The time of the employees' departure from the lounge is in dispute. At approximately 9:09 p.m., the employees' truck, driven by Collins, missed a curve in the road and became airborne. The employees were ejected from the truck and suffered serious injuries. Witnesses testified the truck was traveling at a high rate of speed and on the wrong side of the road immediately before the accident. A state trooper who responded to the accident found empty, full, and open bottles

and cans of beer strewn in and around the truck.  Collins' blood alcohol level one hour after the accident was .14.

American Home Insurance Company, the workers' compensation insurer for plaintiff, paid benefits to the employees, and assigned its rights in the matter to plaintiff.  Plaintiff brought an action for each employee, alleging Kristi Lanes sold alcohol to the employees while they were in a condition of visible intoxication, in violation of C.R.S. § 12-47-128.5(3)(a)(I).  The actions were consolidated and the district court entered summary judgment in favor of defendant.  The court found plaintiff's claim was statutorily barred and plaintiff had not offered any evidence to support its claim that Kristi Lanes had served the employees while they were visibly intoxicated.

We review the grant or denial of summary judgment de novo, applying the same legal standard applied by the district court.  See Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, we examine the factual record in the light most favorable to the nonmoving party.  See Wolf, 50 F.3d at 796.

In Colorado, dram shop liability is governed by statute.

> No licensee is civilly liable to any injured individual or his estate for any injury to such individual or damage to any property suffered because of the intoxication of any person due to the sale or service of any alcoholic beverage to such a person, except when . . . [i]t is proven that the licensee willfully and knowingly sold or served any malt, vinous, or spiritous liquor to such person . . . who was visibly intoxicated.

C.R.S. § 12-47-128.5(3)(a)(I). Colorado's dram shop statute is neither a negligence nor a strict liability statute. Rather, as Colorado courts have explained, and as the statute plainly provides, an injured plaintiff must show the vendor knowingly and intentionally sold an alcoholic beverage to a visibly intoxicated patron. Dickman v. Jackalope, Inc., 870 P.2d 1261, 1263 (Colo. App. 1994).

The statute also limits the class of individuals who may bring an action. "No civil action may be brought pursuant to this subsection (3) by the person to whom the alcoholic beverage was sold or served or by his estate, legal guardian, or dependent." C.R.S. § 12-47-128.5(3)(b). Read in isolation, the subsection appears to bar claims against a vendor by any visibly intoxicated patron who is served alcohol by the vendor and is later, while still intoxicated, injured as a result either of the patron's own conduct or the conduct of a third party. Subsection 3(b) does not sweep so broadly, but prohibits a claim against a vendor that serves a visibly intoxicated patron only when that patron's later injuries are

-4-

proximately caused by the patron's conduct or intoxication. For example, in Sigman v. Seafood Ltd. Partnership, 817 P.2d 527 (Colo. 1991), a vendor allegedly served decedent while he was visibly intoxicated. When the decedent left the bar, he fell down a flight of stairs and sustained injuries resulting in death. The Colorado Supreme Court ruled subsection 3(b) precluded any claim against the vendor by the decedent's estate. Sigman involved a "first party claim" in which a visibly intoxicated patron was served, was later injured as a result of his own intoxication, and then sued the vendor that served him. Sigman did not involve a "third party claim" in which a third party, perhaps a separate intoxicated patron or a complete stranger to the vendor, sues a vendor that willfully and knowingly serves a visibly intoxicated individual and that intoxication later causes injury to the third party. Subsection 3(b) prohibits only first party claims. Id. at 530.

Plaintiff does not dispute the well-settled rule that its claims are derivative of the employees' claims and therefore permitted only if the individual employee could bring the same claim. See Tate v. Industrial Claim Appeals, 815 P.2d 15, 18 (Colo. 1991). Based on this principle, we agree with the district court that subsection 3(b) precluded any claim brought by plaintiff to recover benefits paid to or on behalf of Collins, who as the driver of the vehicle had only a first party claim, but did not preclude plaintiff's claims to recover benefits paid to or on

-5-

behalf of the other two employees, who had third party claims.

The district court dismissed plaintiff's remaining claims on the merits, ruling plaintiff had failed to produce any credible evidence that the employees were served by an agent of Kristi Lanes while they were visibly intoxicated. In doing so, the court considered whether *any* employee had been served while visibly intoxicated. Once it is determined claims on behalf of Lacen and Chaparro are not barred by § 12-47-128.5(3)(b), the remaining inquiry is whether the driver of the truck (Collins) was served at Kristi Lanes while he was visibly intoxicated. Any inquiry into the degree of visible intoxication of Lacen and Chaparro is unnecessary because their intoxication was not the proximate cause of their injuries. Their intoxication is relevant only to the extent utilized to determine their respective degrees of comparative negligence.

It is not disputed that Collins was sober when he entered the lounge or that he was intoxicated when the accident occurred. The evidence indisputably indicates Collins consumed two beers at the lounge and was not in a state of visible intoxication when he left the lounge. Collins testified he was not intoxicated when he left the lounge, and Lacen verified there was nothing in Collins' demeanor to indicate he was intoxicated, that Collins "walked fine" and did not slur his speech at the lounge. Cindy Wiese and Mascarenaz testified none of the employees exhibited any signs of visible intoxication.

-6-

Plaintiff directs our attention to the affidavit of Rasheed Akir, the employees' supervisor, in which Akir attested when he signed off duty at 6:00 p.m. on the night of the accident, the employees had not yet signed out. Plaintiff also claims the district court ignored the expert report prepared by Dr. Kathey Verdeal, in which she concluded (1) "[d]rinking began at 6:30 p.m. and ended between 8:30 and 8:45 p.m.," (2) Collins consumed 9.7 standard drinks, Chaparro 9.1 standard drinks, and Lacen 7.1 standard drinks, (3) such significant consumption on an empty stomach "paved the way for a rapid & visible state of intoxication," and (4) "the large & sloppy movements which contributed at the time of the accident[] existed during the later portion of the drinking episode at the bowling alley." Aplt's App. at 136-39. Since Dr. Verdeal opined the employees were exhibiting signs of intoxication before the accident occurred, plaintiff argues genuine issues of material fact exist that preclude entry of summary judgment.

We agree that circumstantial evidence is sufficient to create a genuine issue of material fact for purposes of determining whether a licensee willfully and knowingly sold or served alcohol to a visibly intoxicated person. See Christoph v. Colorado Communications Corp., 946 P.2d 519, 523 (Colo. App. 1997); Brown v. Hollywood Bar & Café, 942 P.2d 1363, 1365-66 (Colo. App. 1997). However, even circumstantial evidence must be relevant and must be based on more than

surmise, speculation, or conjecture.  See York v. AT&T , 95 F.3d 948, 955 (10th Cir. 1996).

Dr. Verdeal's opinion is contradicted on the material factual points by testimony of witnesses who were present at Kristi Lanes and in a position to observe the employees' conduct.  The night the accident occurred was a league bowling night at Kristi Lanes.  League play begins at 7:00 p.m. and participants generally begin arriving around that time or shortly thereafter.  Lacen specifically recalled when league bowlers began arriving and the lounge became busy, he "told the guys it was time to go."  Id. at 27.  Collins likewise recalled Lacen "saying that the leagues were coming in and it was . . . gonna start getting crowded in there, so we might as well just head out."  Id. at 41.  Cindy Wiese testified the employees left "right when the league started."  Id. at 70.  Jim Wiese, who was busy preparing for league bowling, remembers that "a little after seven" he called to Cindy Wiese and asked if Lacen had left and she said yes.  Id. at 65-66.  Mascarenaz testified the employees were not in the lounge when he left at 7:15 p.m.  This evidence demonstrates while Dr. Verdeal's conclusion that drinking ended between 8:30 and 8:45 p.m. may have been correct, her implicit conclusion the employees were drinking in the lounge until that time was conjecture.

The evidence proffered by plaintiff is of a different nature than the

-8-

circumstantial evidence offered in Christoph and Brown. In Christoph, the plaintiff offered evidence that third parties observed the intoxicated patron purchasing and consuming large quantities of beer, acting "loud and rowdy," and holding onto the wall when walking. 946 P.2d at 522. In Brown, one of the patron's friends testified he believed the patron to be too intoxicated to drive, and the bartender testified when she served the patron a beer approximately one-half hour before the accident he poured it down the front of his shirt. 942 P.2d at 1366. Here, no direct *or* circumstantial evidence exists to raise a genuine issue of material fact concerning either the "willfully and knowingly" or "visible intoxication" elements of the statute. See Christoph, 946 P.2d at 522 (citing Dickman, 870 P.2d 126).

In short, Dr. Verdeal's report does not assist in the resolution of any issue before the court. Dr. Verdeal reconstructed a time line that was inconsonant with the evidence and assumed the employees consumed most of their alcohol at the lounge. The report does not assist in clarifying when the employees arrived at the lounge, how much they drank at the lounge, when they left the lounge, what happened after they left, and most important, whether a Kristi Lanes employee willfully and knowingly served Collins while he was visibly intoxicated. Cf. Allen v. Town of Muskogee, 119 F.3d 837, 846 (10th Cir. 1997) (noting although expert's testimony raised an inference in § 1983 action that town inadequately

trained police officers, testimony was grounded in speculation and constituted a "mere scintilla" of evidence that was insufficient to preclude summary judgment).

The evidence offered by defendant that Collins exhibited no signs of visible intoxication remains unrebutted and uncontroverted. Moreover, regardless of when the employees arrived at the lounge, the evidence indicates when they left Collins had consumed no more than two beers and he was not visibly intoxicated. Our inquiry ends once we determine plaintiff has offered insufficient evidence from which a rational factfinder could conclude the vendor served Collins while he was visibly intoxicated.

Plaintiff also contends the district court erred in failing to make a threshold analysis of its expert's report under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), before excluding the expert's conclusion. Plaintiff did not raise this issue before the district court and we will not consider the issue on appeal. See Tele-Communications, Inc. v. CIR, 104 F.3d 1229, 1232 (10th Cir. 1997). Further, it is evident from the court's rulings in this case that the court did not exclude the expert's report; it merely concluded it carried little if any weight in the face of the testimony from witnesses who were present and in a position to observe the facts at issue. The court made no specific ruling that the report was inadmissible. Finally, plaintiff contends the court's final decision was inconsistent with its previous evaluation of the case. In this case, the court asked

numerous questions of both counsel during their summary judgment arguments. Plaintiff takes one statement made by the court at approximately midpoint in the arguments as a final conclusion that plaintiff had raised a sufficient factual question on the timing issue (departure from the mine/departure from the lounge) to survive summary judgment. A court is not prohibited from working through the issues with counsel and reaching a final decision that is contrary to statements made by the court prior to reaching its final decision.

Affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge