24CA0930 Marriage of Barron 11-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0930
Boulder County District Court No. 22DR30321
Honorable Bruce Langer, Judge

In re the Marriage of

Samantha Weston,

Appellant,

and

Ira Barron,

Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

Jonathan S. Willett, Boulder, Colorado, for Appellant

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

¶ 1     In this case between Samantha Weston (wife) and Ira Barron (husband), wife appeals several of the district court's decisions from the dissolution proceedings and in its permanent orders.  She also appeals the court's order finding her in contempt and imposing sanctions.  We affirm and remand to the district court for the determination of appellate attorney fees and costs.

## I.     Background

¶ 2     The parties married in 2004.  In August 2022, wife petitioned for legal separation from husband, which he later converted to a petition for dissolution of marriage.  A permanent orders hearing was set for April 2023.

¶ 3     Pursuant to C.R.C.P. 16.2(e)(3) and (g)(5), the parties' disclosures and witness lists were due on February 6, 2023, and their expert reports were due on February 13, 2023.  Each party filed timely witness disclosures.  The parties endorsed Glenn Fleckenstein as a joint expert retained to appraise four properties, including the marital home (Mapleton).  Husband also listed an "unknown rebuttal real estate appraiser" and an "unknown financial expert."  Wife listed an "unknown personal property valuator."

¶ 4     On February 14, husband moved to extend the deadline for expert reports, arguing that the large marital estate and his separate property interests required an expert "to assist with valuing the pre-marital and/or inherited value of the numerous sizable accounts." Wife objected, arguing that he did not identify the type of expert or a reason for the delay. The district court denied husband's motion. Husband then endorsed William Kamin as a rebuttal real estate expert and timely filed a rebuttal expert report. *See* C.R.C.P. 16.2(g)(5).

¶ 5     Because the parties took little action in the case, the court rescheduled the April 2023 permanent orders hearing for October 23. In late July, wife's attorney filed a motion to withdraw, which the court granted in early August. More than a month later, the same attorney filed a limited entry of appearance to request a continuance of the October 23 permanent orders hearing. The motion requested a continuance because the parties had not undertaken "formal discovery," and husband's documentation was insufficient to trace or value his separate property. The court denied the motion, finding no good cause. Wife then filed a pro se motion to continue, which the court also denied.

¶ 6    On October 10, four days after the court denied wife's second motion to continue, a new attorney entered a limited appearance for wife and asked the court to reconsider her motion to continue the permanent orders hearing. The court granted the motion, reasoning that the marital estate was complex, neither party had updated their financial disclosures, and husband's separate property would require tracing.

¶ 7    At an October 20 status conference, wife expressed concerns about her ability to retain counsel given her ongoing mental health challenges. She also expressed concerns about her original attorney's diligence and effort in the case, requesting more time to secure experts. The court was sympathetic but explained that the case had been pending for "a very long time, and . . . the deadline for experts [wa]s long past." As discussed in more detail in Part II.B, the court noted that it would entertain arguments about whether to extend deadlines but would not rule until it heard such arguments. The court then set the permanent orders hearing for February 2024.

¶ 8    On October 26, a third new attorney entered his appearance for wife and, on November 15, moved to extend the discovery and

expert deadlines. The motion did not identify a proposed expert or include an expert report but indicated that counsel had "contemplated contacting an accounting expert to competently trace [husband's] assets." Beyond stressing that counsel lacked necessary information about husband's assets and the marital estate, the motion failed to make any specific discovery requests.

¶ 9 At a later status conference, the district court denied wife's motion to extend the deadlines. It explained that the case had been pending "for well over a year. . . . [Wife] was represented . . . for almost a year . . . , and a large amount of discovery and endorsement of expert witnesses and expert reports . . . ha[d] been done ad nause[a]m." The court was also unsure as to what necessary information wife sought, given that the parties had "over a year to try to unravel th[e] [financials] and gather the information."

¶ 10 The permanent orders hearing occurred on February 27, 2024, and the court issued the dissolution decree that day. Then, in March 2024, as discussed further below, the court granted husband's motion to hold wife in contempt and imposed remedial

sanctions, including attorney fees. Finally, the court issued written permanent orders in April 2024.

¶ 11    Wife now appeals. She contends that the district court erred by refusing to extend the expert and discovery deadlines. She also argues that the court made several errors in its property distribution. Finally, she challenges the court's contempt sanction awarding husband attorney fees. The court did not err with respect to the deadlines or property distribution, and we affirm its contempt finding. However, we first address and reject husband's motion to dismiss this appeal.

## II.    Analysis

### A.    Finality

¶ 12    After the parties filed appellate opening and answer briefs, husband moved to dismiss the appeal for lack of finality. We conclude that the issues on appeal arise from final, appealable judgments and deny the motion to dismiss.

¶ 13    At the permanent orders hearing, wife's counsel explained the parties' agreement that, within forty-five days of the court's entry of permanent orders, they would "mediate/arbitrate the division of [their] personal property so the [c]ourt doesn't have to deal with it."

Husband's attorney responded, "I believe [wife's counsel] captured it, Your Honor."  The court's permanent orders divided all the parties' property except their personal property, noting that the parties "agreed to submit the division of personal property to mediation/arbitration . . . [and that] [t]he Court w[ould] enter no additional orders regarding division of personal property."

¶ 14   Husband later moved to compel arbitration concerning the personal property division, explaining that the parties' mediation attempts were unsuccessful.  A magistrate ruled on the motion, ordering further mediation.  Husband then asked the district court to review the magistrate's order, requesting the court to order the parties to agree on an arbitrator.

¶ 15   Although the written permanent orders, permanent orders hearing, and subsequent motions clearly evinced the parties' agreement to arbitrate, the district court believed it lacked their consent and therefore could not compel arbitration.  But the court concluded that the magistrate erred by ordering further mediation, so it ordered an evidentiary hearing before the magistrate to resolve the personal property division.  Husband now argues that the

appeal is not final because the personal property division remains pending.

¶ 16    Our jurisdiction is limited to reviewing final judgments. *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14; *see* § 13-4-102(1), C.R.S. 2025; C.A.R. 1(a)(1). A final judgment "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties." *In re Marriage of Wiggs*, 2025 COA 10, ¶ 7 (quoting *Schaden v. DIA Brewing Co.*, 2021 CO 4M, ¶ 46). "In dissolution proceedings, an order generally is not final and appealable until the district court has issued permanent orders resolving all outstanding issues between the parties, including . . . maintenance, disposition of property, and attorney fees." *Id.* at ¶ 9; *see In re Marriage of Hill*, 166 P.3d 269, 272 (Colo. App. 2007) (Dissolution cases often involve "intertwined issues" that are "part and parcel of dissolving the marriage.").

¶ 17    But there are "exceptions to the rule that a final order must dispose of the *entire* litigation." *Wiggs*, ¶ 10. For example, a judgment is final as to a claim when it "completely resolves the rights of the parties . . . with respect to [that] claim and no factual

7

or legal issues remain for judicial resolution." *Brody v. Bock*, 897 P.2d 769, 777 (Colo. 1995). And an outstanding issue does not "prevent finality when its resolution will not change or moot the determinations contained in the order." *Hill*, 166 P.3d at 271.

¶ 18    Here, the district court entered the decree of dissolution, entered permanent orders, and explicitly stated that it would "enter no additional orders regarding division of personal property," referring the matter to "mediation/arbitration." Therefore, the permanent orders left "nothing further for the court pronouncing [the order] to do." *Wiggs*, ¶ 7 (quoting *Schaden*, ¶ 46). And the parties agreed to handle the personal property division separately, such that it could "not change or moot the determinations contained in the" court's permanent orders. *Hill*, 166 P.3d at 271. Accordingly, "no factual or legal issues remain[ed] for *judicial* resolution" with respect to the permanent orders. *Brody*, 897 P.2d at 777 (emphasis added).

¶ 19    Furthermore, when parties agree to arbitrate a particular issue, "a court lacks subject matter jurisdiction to consider that issue." *In re Marriage of Roth*, 2017 COA 45, ¶ 16 (citation omitted). Here, the parties agreed to "mediation/arbitration," which they

8

never disputed in the motion to dismiss or the response.[1]  After their mediation attempts failed, arbitration was the next logical step towards resolving the personal property dispute.[2]  Because the court explicitly declined to enter further orders concerning personal property, and the parties agreed to arbitrate that issue — leaving nothing more for the district court to do — the court lacked subject matter jurisdiction to consider the merits of the personal property disposition.  *See id.*; *Wiggs*, ¶ 7.  Thus, the court's permanent orders are a final, appealable judgment.

---

[1] Because the parties do not raise or challenge the validity of their agreement to arbitrate, we do not address it.  *See* § 13-22-206, C.R.S. 2025 (validity of arbitration agreements).

[2] To the extent that the district court's review of the magistrate's order suggests otherwise, that order is not before us for review because neither party appealed the various arbitration-related orders.  *See Compos v. People*, 2021 CO 19, ¶ 35 (noting that, under the party presentation principle, parties "are responsible for advancing the facts and arguments entitling them to relief" (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008))).

## B. Discovery and Expert Deadlines

¶ 20    Wife first contends that the district court erred by denying her November 2023 motion to extend discovery and expert witness deadlines.[3]  We perceive no error.

### 1. Standard of Review and Applicable Law

¶ 21    A district court "has discretion to impose a reasonable discovery deadline in managing its docket." *Frisco Lot 3 LLC v. Giberson Ltd. P'ship*, 2024 COA 125, ¶ 99 (citation omitted); *see also* C.R.C.P. 16.2(f)(5) (courts may extend discovery deadlines for good cause).  District courts also have "broad discretion to determine whether a party should be permitted to endorse witnesses after the" deadline.  *Brown v. Hollywood Bar & Cafe*, 942 P.2d 1363, 1365 (Colo. App. 1997); *see In re Marriage of Antuna*, 8 P.3d 589, 593 (Colo. App. 2000).  We review discovery orders for an

---

[3] Throughout her brief, wife does not state whether any issues were preserved and cites only to the "Location of the Ruling in the Record" without textual context.  Our appellate rules require a *statement* (not a mere citation) of "whether the issue was preserved, and if preserved, the precise location in the record *where the issue was raised* and where the court ruled."  C.A.R. 28(a)(7)(A) (emphasis added).  Wife's record citations also do not follow the format detailed in our policy on record citations.  *See* C.A.R. 28(e).  We admonish counsel to review our appellate rules, which "are not mere technicalities."  *Cikraji v. Snowberger*, 2015 COA 66, ¶ 10.

abuse of discretion. *Gateway Logistics, Inc. v. Smay*, 2013 CO 25,

¶ 13. A court abuses its discretion when its decision is manifestly

arbitrary, unreasonable, or unfair or when it misapplies the law. *In*

*re Marriage of Sheehan*, 2022 COA 29, ¶ 23.

### 2. Analysis

¶ 22 Wife makes various arguments as to why the court erred by

not extending the discovery and expert deadlines.[4] First, she

appears to contend that her first attorney's alleged negligence

excused her noncompliance with the deadlines and constituted

good cause for extending them. But the district court noted that

this attorney represented wife for nearly a year, giving the parties

ample time to conduct discovery. And "none of [wife's] complaints

about [her] former counsel demonstrate an abuse of discretion by

the trial court." *Frisco Lot 3 LLC*, ¶¶ 96, 101-02 (granting a

continuance but prohibiting further discovery or expert disclosures

was not an abuse of discretion).

---

[4] Although the court continued the permanent orders hearing, this continuance did not alter the original discovery and expert deadlines. *See Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 977 (Colo. 1999) (When a trial is continued for reasons unrelated to discovery issues, "the discovery deadlines associated with the original trial date remain in effect.").

¶ 23    Wife also contends that the court erred by not considering the factors in C.R.C.P. 26(b)(2)(F). C.R.C.P. 16.2, which governs domestic relations cases, instructs courts to "grant all reasonable requests for additional discovery for good cause as defined in C.R.C.P. 26(b)(2)(F)." C.R.C.P. 16.2(f)(4). But Rule 26(b)(2) governs the *scope*, not the timing, of discovery; it limits the number of depositions, interrogatories, examinations, and requests for production and admission. And Rule 26(b)(2)(F) provides factors for courts to consider before modifying those limits; it does not apply to discovery *deadlines*. *See DCP Midstream, LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶ 9 (instructing courts to consider Rule 26(b)(2)(F)'s factors "to resolve a dispute regarding the proper scope of discovery").

¶ 24    Despite making several requests to continue the permanent orders hearing, wife did not move to extend discovery or expert deadlines until November 2023, over six months after the original hearing date. Beyond citing a general lack of information, she did not articulate in detail what additional discovery she intended to seek. *See Ammons v. Am. Fam. Mut. Ins. Co.*, 897 P.2d 860, 864 (Colo. App. 1995) (denying additional discovery was proper when

12

the party did not identify the additional discovery it sought); *Makeen v. Hailey*, 2015 COA 181, ¶¶ 30, 33 (denying a discovery extension was proper when the party "had nearly eleven months to conduct discovery" and failed to identify any prejudice).

¶ 25    Even on appeal, wife fails to articulate what discovery she would have sought, arguing only that she was forced to take husband's evidence "at face value . . . because [she] had no other information and was denied discovery." Yet it is not clear what "other information" she wanted. Moreover, the court "never prevented [wife] from obtaining discovery. . . . Rather, [it] declined [her] request to reopen discovery, a decision well within the court's discretion." *Silva v. Wilcox*, 223 P.3d 127, 134 (Colo. App. 2009). And wife "had nearly eleven months to conduct discovery." *Makeen*, ¶ 30. Her attorney's failure to do so is not an error attributable to the court. *See Frisco Lot 3 LLC*, ¶ 96.

¶ 26    Finally, even if the record does not support the court's finding that the parties conducted discovery and endorsed experts "ad nause[a]m," the court did not abuse its discretion by not reopening discovery. The case had been pending for over a year, wife sought multiple continuances without asking to reopen or extend discovery

13

deadlines, her motion did not articulate what specific information she sought, and her third attorney filed the motion nearly three weeks after entering his appearance.

¶ 27     Wife also argues that the district court abused its discretion when it denied her request to extend the deadline for endorsing expert witnesses.  But her motion did not name a specific expert, provide an expert report, or give any details about the expert beyond stating that her counsel had "contemplated contacting an accounting expert to competently trace the assets."  And her original witness list only included a potential rebuttal personal property valuator, not an accounting expert.

¶ 28     Moreover, wife objected to husband's motion seeking an extension of the expert report deadline so an expert could "assist with valuing the pre-marital and/or inherited . . . accounts."  Not only did wife later seek an extension for nearly identical reasons, but her motion also did not identify an expert despite her objection to husband's motion on those same grounds.  In these circumstances, the district court did not abuse its discretion by denying wife's belated request.  *See Brown*, 942 P.2d at 1365.

### C. Property Division and Maintenance

¶ 29    Wife next argues that, in awarding Mapleton to her, the court misapplied the law and accepted erroneous valuations. She also contends that the court erred by declining to award her maintenance. We affirm.

### 1. Additional Facts

¶ 30    Before the marriage, husband purchased Mapleton, which remained titled solely in his name. Both parties asked to be awarded Mapleton, and the court considered appraisals from two experts: (1) Fleckenstein, the joint expert; and (2) Kamin, husband's rebuttal expert. In its permanent orders, the district court accepted Kamin's 2023 valuation of $2.95 million but subtracted the $420,274 mortgage, leaving equity of $2,529,726. It also accepted Kamin's valuation of $1,025,000 at the time of marriage, which it found was the value of husband's separate property interest. It then awarded Mapleton to wife (ordering her to refinance the mortgage to her name only) but noted that it accounted for husband's separate property interest in Mapleton in its overall division. Finally, the court rejected wife's request for spousal maintenance.

## 2. Standard of Review

¶ 31    District courts have "great latitude to equitably divide the marital estate," and we will not disturb that division absent an abuse of discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or a misapplication of the law. *Id.* We review de novo whether the district court applied the correct legal standard. *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 9.

¶ 32    We also review a district court's maintenance award (or lack thereof) for an abuse of discretion. *See Medieros*, ¶ 58.

## 3. Property Division

¶ 33    "When dividing the marital estate, the district court determines whether an asset is marital and subject to division or separate and shielded from division." *Medeiros*, ¶ 49; *see* § 14-10-113(1), C.R.S. 2025. Once the court distinguishes separate from marital property, it must divide the marital property to "ensur[e] an equitable, but not necessarily equal, division." *Capparelli*, ¶ 9.

¶ 34    Subject to certain exceptions, there is a statutory presumption that property acquired during the marriage is marital. *Medeiros*, ¶ 49 (citing § 14-10-113(3)); *Capparelli*, ¶ 10. Property acquired

16

before marriage is generally not marital, *In re Marriage of Corak*, 2014 COA 147, ¶ 11, except to the extent that its value has appreciated during the marriage, *In re Marriage of Krejci*, 2013 COA 6, ¶ 13; § 14-10-113(4). Additionally, transferring separate property to joint ownership during the marriage creates a presumption that the donor spouse intended to gift the property to the marriage such that it "is marital property absent clear and convincing evidence to the contrary." *Capparelli*, ¶ 11.

¶ 35 Wife first contends that the district court was required, but failed, to consider her contributions to Mapleton's value. Under section 14-10-113(1)(a), courts must consider contributions to *marital* property. The court acknowledged wife's argument that her contributions rendered Mapleton's *total* value marital. But it explained that the parties' "conduct and/or contributions" during the marriage "d[id] not control the issue of a premarital separate property interest," finding that husband had a separate property interest in Mapleton of $1,025,000. Because husband bought the home before the marriage and never transferred it into joint ownership, the court held that he did not intend to gift his premarital interest to the marriage. *See Corak*, ¶ 11; *Capparelli*,

¶¶ 10-11. We conclude that the court did not err by determining the value of husband's separate property interest in Mapleton. wife's contributions had no bearing on his separate property interest.  *See* § 14-10-113(1)(a).

¶ 36    We also reject wife's argument that the court did not apply the correct burden of proof "to rebut a presumption that property acquired during the marriage [wa]s marital."  Mapleton was acquired *before* the marriage, and it was never transferred into joint ownership.  *See* § 14-10-113(2), (3); *Capparelli*, ¶ 11.  So any burden to overcome a marital presumption does not apply.  And whether the parties paid the mortgage during the marriage with joint or separate funds had no apparent impact on the court's award; it awarded the house to wife and awarded husband only his

separate property interest in it, which was unaffected by the parties' conduct during the marriage.[5]

¶ 37     Wife next argues that the record does not support the court's acceptance of Kamin's expert rebuttal evidence because the court "neglected to address [the] unlikely contention that [Mapleton] increased in value from [$546,800] when purchased [in 2000] to [$]1.25 million" when the parties married in 2004.  First, Kamin's 2004 valuation was $1,025,000, not $1,250,000.  Second, "[w]hen dividing marital assets, the court may select the valuation of one party over that of the other party or make its own valuation, and its decision will be affirmed if the value is reasonable in light of the

---

[5] Because husband did not cross-appeal, we do not address whether the court committed legal error in awarding the marital home to wife.  *See Koinis v. Colo. Dep't of Pub. Safety*, 97 P.3d 193, 197 (Colo. App. 2003) (recognizing that an appellee "must file a cross-appeal in order to raise a contention that, if successful, would increase its rights under the judgment or order being reviewed").  In no way, however, do we endorse what the court did here — specifically, awarding husband's *separate* property to wife.  *See In re Marriage of Mitchell*, 55 P.3d 183, 185 (Colo. App. 2002) (holding that husband's separate real property "could not be awarded to wife," but the court "correctly classified the increase in value of th[e] property during the marriage as marital property, equitably divided that increase, and entered a monetary award to wife"); *In re Marriage of Sarvis*, 695 P.2d 772, 773 (Colo. App. 1984) (ordering husband to convey his separate real property to wife was error).

19

evidence as a whole." *Medeiros*, ¶ 41.  And wife never attempted to impeach Kamin's 2004 estimate or argue that it was unreasonable.

¶ 38   Considering the evidence as a whole, we conclude that the court's valuation was reasonable.  *See id.*  Kamin's 2004 valuation was $1,025,000, while Fleckenstein's was $920,000.  But Fleckenstein's report included a valuation range "from $841,360 up to $1,113,840."  Therefore, Kamin's $1,025,000 valuation fell within the (higher) range of Fleckenstein's valuation.  The court was free to accept Kamin's valuation over Fleckenstein's, and nothing in the record suggests that Kamin's valuation was unreasonable for a Boulder home.  *See id.*  Accordingly, notwithstanding *supra* footnote 5, the court did not abuse its discretion by accepting Kamin's valuation of Mapleton when awarding Mapleton to wife.

### 4.   Maintenance

¶ 39   After considering various factors, a district court may award maintenance only if the requesting party "lacks sufficient property, including marital property . . . , to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment." § 14-10-114(3)(d), C.R.S. 2025.  Because maintenance depends on the court's property division, "the court

must first divide the marital property before deciding whether maintenance is necessary to provide for the requesting party's reasonable needs." *In re Marriage of Morton*, 2016 COA 1, ¶ 31.

¶ 40 Wife next contends that the court erred by awarding her "an overvalued non-liquid asset while saddling her with the . . . mortgage" without awarding maintenance.[6] She also suggests that the court erred by not awarding maintenance because it overvalued the property awarded to her. She points to the court's conclusion that it awarded her over $5 million in assets, which included $3,943,817 in specified assets, "plus an unknown amount of assets that w[ould] be divided equally . . . because they could not be valued." She contends that the court erred by assigning value to unvalued assets. We conclude that any error was harmless. *See* C.R.C.P. 61.

¶ 41 Courts should generally provide for a spouse's financial needs through property disposition instead of maintenance. *In re*

---

[6] Although wife apparently disputes Kamin's 2023 valuation of $2.95 million, Fleckenstein's valuation was $2.85 million (less than a 5% difference). *See In re Marriage of Zappanti*, 80 P.3d 889, 893 (Colo. App. 2003) ("An error affecting only a small percentage of the overall marital estate is harmless . . . .").

21

*Marriage of Huff*, 834 P.2d 244, 252 (Colo. 1992). And the court may award maintenance only when the requesting spouse cannot meet their "reasonable needs." § 14-10-114(3)(d). Here the court noted that, although the parties were retired, wife's award included Mapleton, a separate rental property with no mortgage that would produce income, and "investment accounts of more than $600,000," which would also generate income. It concluded that wife could meet her reasonable needs without maintenance. We agree.

¶ 42    Even if there was no support for the court's finding that wife's award exceeded $5 million, nothing in the record suggests that she could not support herself or pay Mapleton's mortgage with a $3.9 million award. Although she argues that she may need to "sell[] assets or tap[] into her retirement accounts," that does not mean she cannot meet her reasonable needs. She was sixty-three at the time of dissolution, so it would be reasonable for her to "tap[] into her retirement accounts" in the near future. And while she suggests that the court should have allocated Mapleton's mortgage to husband, she agreed during the permanent orders hearing "that whoever gets awarded Mapleton should also be awarded the mortgage on that property." *See Horton v. Suthers*, 43 P.3d 611,

22

619 (Colo. 2002) (invited error applies when a party asks the court to take a certain action — or acquiesces to an action — of which she later complains). Finally, although wife argues that husband received $2,661,394.90 in "liquid" assets, while she claims to have only received $451,583.90 in liquid assets, much of husband's award included his separate property.[7] *See Medeiros*, ¶ 49 (separate property is not divisible). And the court was not required to equally distribute assets. *See Capparelli*, ¶ 9 (The court must "ensur[e] an equitable, but not necessarily equal, division.").

¶ 43    Therefore, the court did not abuse its discretion by awarding Mapleton's mortgage to wife without also awarding maintenance.[8]

---

[7] The court's conclusion that wife received over $600,000 in investment accounts differs from wife's calculation of the "liquid" assets awarded to her because she excluded business investments and retirement accounts from her calculation.

[8] We also reject wife's arguments that the court failed to consider husband's social security and potential dividend income; the court's maintenance decision was based on wife's ability to meet her needs, not husband's ability to pay. *See In re Marriage of Antuna*, 8 P.3d 589, 595 (Colo. App. 2000) ("For purposes of maintenance, . . . the payor's income is relevant to the extent that it is indicative of that spouse's ability to meet his or her own needs while meeting those of the payee spouse.").

## D. Contempt

¶ 44 Wife argues that the district court erred by ordering her to pay husband's attorney fees because it did not impose a proper remedial sanction after finding her in contempt. Specifically, she argues that, because the court's order did not include a "purge clause," it could not award attorney fees. We disagree.

### 1. Additional Facts

¶ 45 The petition for legal separation included a clause restraining the parties "from transferring, encumbering, concealing, or in any way disposing of, without the consent of the other party or an order of the court, any marital property, except in the usual course of business or for the necessities of life." § 14-10-107(4)(b)(I)(A), C.R.S. 2025 (imposing an automatic statutory injunction in dissolution cases).

¶ 46 In November 2023, husband asked the court to hold wife in contempt for violating this provision. He alleged that wife unilaterally received and retained money from one of the parties' rental properties, which she deposited into a new bank account in her name. In total, husband alleged that wife improperly retained

24

$19,626.85, which he argued should have been deposited into the parties' joint account.

¶ 47    The court held a contempt hearing in March 2024. After the hearing, the court made oral and written findings, holding wife in contempt. The court ordered wife to transfer $6,200 to the joint account and deposit all future rent payments there. It also noted that it would equitably distribute the funds in wife's new account when it issued the permanent orders. Its remedial contempt sanction included an award to husband of $5,300 in attorney fees and costs.

2.    Standard of Review and Applicable Law

¶ 48    Contempt findings are within the district court's discretion "and will not be reversed absent an abuse of discretion." *In re Estate of Elliott*, 993 P.2d 474, 478 (Colo. 2000). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *Sheehan*, ¶ 23.

¶ 49    C.R.C.P. 107 governs contempt citations and sanctions, which may be remedial or punitive. Remedial sanctions are "imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform."

25

C.R.C.P. 107(a)(5). If a district court finds a party in contempt and orders remedial sanctions, its order must "describ[e] the means by which the person may purge the contempt and the sanctions that will be in effect until the contempt is purged." C.R.C.P. 107(d)(2). The court may also, in its discretion, impose "[c]osts and reasonable attorney[] fees in connection with the contempt proceeding." *Id.*

### 3. Application

¶ 50 Wife argues that the court's order improperly omitted a purge clause. In support, she contends that the court said in its oral findings, "I'm not sure that . . . I can actually remedy anything by having her move the money from one account to another. The money exists. The money will be taken into consideration when I do the final division of property." And in its written order, the court explained that it would distribute the funds from wife's individual account in its permanent orders. But the written order clearly instructed wife to deposit $6,200 into the shared account and "to deposit all future rent payments into the [shared] account." Therefore, the court properly described the means by which wife could purge the contempt. *See id.* Because the court imposed a proper remedial sanction that included a purge clause, it was

26

authorized to award attorney fees. *See In re Marriage of Webb*, 284 P.3d 107, 110 (Colo. App. 2011). Accordingly, we affirm the district court's award of husband's attorney fees as a remedial contempt sanction.

### III. Appellate Attorney Fees and Costs

¶ 51 Husband requests appellate attorney fees and costs. First, he argues that wife's appeal is frivolous under section 13-17-102(2), C.R.S. 2025, because (1) she failed to properly cite the record; (2) the court's property division and maintenance conclusion are plainly correct; and (3) wife's contentions regarding the discovery and expert deadlines are issues "for the Attorney Regulation Office against Wife's prior counsel." But appeals are not frivolous except in "clear and unequivocal cases when the appellant presents no rational argument, or when the appeal is prosecuted for the sole purpose of harassment or delay." *Good Life Colo., LLC v. WLCO, LLC*, 2025 COA 8M, ¶ 106 (citation omitted). And while we rejected most of wife's arguments on appeal, "we cannot say that [they] were so lacking in legal support that they were not rational" or that her appeal sought harassment or delay. *Id.* at ¶ 107.

¶ 52 Husband also seeks his appellate fees and costs under C.R.C.P. 107(d)(2). We agree that costs and fees incurred in connection with an appeal of a contempt order are costs and fees incurred "in connection with the contempt proceeding." *Madison Cap. Co. v. Star Acquisition VIII*, 214 P.3d 557, 562 (Colo. App. 2009) (quoting C.R.C.P. 107(d)(2)); *see In re Marriage of Dean*, 2017 COA 51, ¶ 33. However, husband is entitled only to his attorney fees and costs incurred with respect to the contempt portion of the appeal. *See Madison Cap. Co.*, 214 P.3d at 562. We therefore exercise our discretion under C.A.R. 39.1 and remand for the district court to determine an award of husband's reasonable appellate attorney fees and costs incurred for defending the contempt portion of the appeal.

## IV. Disposition

¶ 53 The judgment is affirmed. We remand the case so the district court may determine an appropriate award of reasonable appellate attorney fees and costs in accordance with this opinion.

JUDGE BROWN and JUDGE MEIRINK concur.